UNITED STATES of America, Appellee,

v.

Dereck W. ANDRADES, also known as Light, also known as Dererrick Blocker, Defendant–Appellant.

Docket No. 98–1112.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1998.

Decided Feb. 26, 1999.

Darrell B. Fields, Legal Aid Society Federal Defender Division Appeals Bureau, New York, NY, for Defendant–Appellant.

Paul D. Silver, Assistant United States Attorney, Northern District of New York (Thomas J. Maroney, United States Attorney), for Appellee.

Before: OAKES, JACOBS, and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Dereck W. Andrades appeals from the November 25, 1997, judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*) sentencing him to, among other things, 92 months imprisonment for his participation in a conspiracy to distribute cocaine base. Andrades asks that we vacate his plea of guilty to the criminal charge because the district court did not advise him of the effect of supervised release and failed to establish the factual basis for his plea or assure itself that appellant understood the nature of the conspiracy charge. Although we find the district court's error regarding supervised release to be harmless, we must vacate Andrades' guilty plea because the record does not establish that Andrades understood the nature of the crime to which he pleaded guilty. A criminal defendant's plea of guilty is perhaps the law's most significant waiver of constitutional rights, and district courts must not accept this waiver lightly. Rather, the judge must administer this proceeding actively, diligently and with full attention to detail.

## BACKGROUND

A three-count indictment filed on April 24, 1997, charged Andrades with participating in

a cocaine base distribution conspiracy and substantive crack distribution and possession in August 1996, in violation of 21 U.S.C. §§ 841, 846. The substantive counts concerned crack sales that took place in Troy, New York on August 16 and 27 in 1996. On July 22, 1997, Andrades pleaded guilty to the conspiracy charge pursuant to a written plea agreement. During the seven-minute plea allocation, the district court did not explain to Andrades the effect of supervised release. Specifically, Judge Scullin did not inform Andrades that if he violated his conditions of supervised release, then he could be imprisoned for the entire supervised release term without credit for time previously served. The district court also failed to elicit from defendant or the government a statement of the factual basis for the plea. Instead, the following exchange took place:

> THE COURT: All right. Count I of the indictment 97–CR–115 charges, in essence, that on or about August 1, 1996, continuing through August 31, 1996, that you did knowingly, willfully and unlawfully conspire with others to intentionally and unlawfully distribute and possess with intent to distribute cocaine base, in violation of federal law. Is this what you did?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: With respect to Count I, then, of indictment 97–CR–115, how do you plead, guilty or not guilty?
>
> THE DEFENDANT: Guilty, sir.

Andrades' plea agreement did not describe supervised release or recite the elements of the crime of conspiracy or the factual basis for the charge. The agreement did contain a statement of maximum statutory penalties, a non-binding calculation of Andrades' offense level under the Sentencing Guidelines, and discussion concerning the government's ability to make a downward departure motion at sentencing based on Andrades' substantial assistance to authorities. Judge Scullin conducted a sentencing hearing on November 12, 1997, to determine whether Andrades distributed drugs on August 27, 1996, and found that defendant and an individual known as "Crunch" sold crack cocaine to two confidential informants on that date. The district court sentenced Andrades on Novem-

ber 12, 1997, to 92 months imprisonment, four years supervised release, and a $100 special assessment. Andrades now appeals his conviction.

## DISCUSSION

### I. Informing defendant of the effect of supervised release

 Rule 11 of the Federal Rules of Criminal Procedure governs our analysis. Rule 11 sets forth requirements for a plea allocation and "is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Renaud,* 999 F.2d 622, 624 (2d Cir.1993) (citations and quotations omitted). *See also United States v. Westcott,* 159 F.3d 107, 112 (2d Cir.1998), *petition for cert. filed,* 119 S.Ct. 831, 67 U.S.L.W. 3435 (1999). We "generally require sentencing courts to adhere strictly to the specific provisions of Rule 11." *Renaud,* 999 F.2d at 624. The minimum standard of information that a district court must personally impart to defendant is contained in Rule 11, but the rule also provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). Therefore, we will not overturn guilty pleas "when there has been a minor and technical violation of Rule 11 which amounts to harmless error." *Renaud,* 999 F.2d at 624 (quotation and citation omitted). Harmless error encompasses "such minor errors as a modest understatement of the maximum penalty, where the penalty actually imposed did not exceed the maximum as erroneously represented by the court." *Id.* at 624–25 (citations omitted).

In the course of accepting a defendant's guilty plea, the district court must "inform the defendant of, and determine that the defendant understands ... the maximum possible penalty provided by law, including the effect of any special parole or supervised release term...." Fed.R.Crim.P. 11(c)(1). The district court failed to comply with this requirement while taking Andrades' guilty plea because Judge Scullin did not explain supervised release at all or discuss its potential impact on Andrades' sentence. *Cf. Unit-*

ed States v. Gonzalez, 820 F.2d 575, 580 (2d Cir.1987) (per curiam) (discussing special parole). The government contends, however, that the error was harmless. We agree.

■ In some instances, the error is harmless where a district court misinforms defendant of the potential term of incarceration and the actual sentence he receives is less than that stated during the plea allocution. Westcott, 159 F.3d at 112–13. In Renaud, we found harmless error even though the district court sentenced defendant to a longer supervised release term than that of which he was advised because defendant did not wish to withdraw his guilty plea. Renaud, 999 F.2d at 625. We now join with those circuit courts of appeals holding that the error is harmless where the district court misinforms a defendant of the applicable supervised release term and the total sentence of imprisonment and supervised release actually imposed is less than that described during the plea allocution. See United States v. Fuentes–Mendoza, 56 F.3d 1113, 1114–16 (9th Cir.1995); United States v. Raineri, 42 F.3d 36, 41–42 (1st Cir.1994); United States v. Bachynsky, 934 F.2d 1349, 1360–61 (5th Cir.1991), modified by United States v. Johnson, 1 F.3d 296, 300–01 (5th Cir.1993); United States v. Barry, 895 F.2d 702, 705 (10th Cir.1990). See also United States v. Syal, 963 F.2d 900, 906 (6th Cir.1992) (holding that defendant's substantial rights may not be affected where court informs him of incorrect maximum penalty that "markedly exceeds" the penalty actually received, including supervised release period). While we decline to adopt an inflexible rule, we hold generally that a defendant's substantial rights are not affected under those circumstances. See Raineri, 42 F.3d at 42 (discussing hypothetical situations where misinformation would not be harmless error).

■ Contrary to defendant's contention, there is no requirement in Rule 11 itself that defendants be advised of their potential punishments pursuant to the Sentencing Guidelines rather than the criminal statute, and we decline to create the requirement. See United States v. Good, 25 F.3d 218, 222 (4th

Cir.1994). While the Sentencing Guidelines certainly are a relevant consideration for defendants entering a plea of guilty, the district court at the time of the plea allocution frequently has too little information available to provide defendant with an accurate sentencing range. For example, probation department officials often have not scored or researched defendant's criminal history, and the court is unaware of upward or downward departure motions that the government or defense counsel may pursue. Both of these factors have significant impacts on Sentencing Guidelines calculations.

During Andrades' plea allocution, Judge Scullin told defendant that he faced imprisonment of up to 40 years and supervised release of at least five years or as long as life.[1] Andrades' plea agreement did mention supervised release, although the document did not explain the punishment. Judge Scullin sentenced defendant to 92 months imprisonment and four years supervised release. The combined penalty actually imposed therefore was less than the maximum that the court represented to Andrades. The district court's failure to comply with Rule 11(c)(1) therefore was harmless error.

## II. Determining defendant's understanding of the charge and finding a factual basis for the guilty plea

■ More important to this appeal is Rule 11's requirement that the district court (1) determine that defendant understands the nature of the charge to which a plea is offered; and (2) make an inquiry to satisfy the court that a factual basis exists for the plea. Fed.R.Crim.P. 11(c)(1), (f). With respect to the first requirement, it is "essential ... that the court determine by some means that the defendant actually understands the nature of the charges." United States v. Maher, 108 F.3d 1513, 1521 (2d Cir.1997). With respect to the second requirement, the district court must place facts on the record at the time of the plea after an inquiry of the defendant, the government, or other available sources of information. Id. at 1524.

1. Due to a typographical error in the plea agreement, the supervised release term was described

as a minimum of "five (4) years." The correct term is four years. 21 U.S.C. § 841(b)(1)(B).

Andrades' seven-minute plea allocution satisfied neither of these requirements. With respect to the Rule 11(c)(1) violation, we find that the error was not harmless. We express no opinion whether the district court's error concerning Rule 11(f) was harmless. We must vacate defendant's guilty plea.

## A. Nature of the charge

■■■ A district court is not required to follow any particular formula in determining that defendant understands the nature of the charge to which he is pleading guilty. The court may "describ[e] the elements of the offense in the court's own words" or "may provide that information by reading the indictment to the defendant where the pertinent count spells out the elements of the offense and the circumstances indicate that this will be sufficient." *Maher,* 108 F.3d at 1521. If defendant's recitation of his own conduct insufficiently supports the relevant charge, then Rule 11(c)(1) nonetheless is satisfied where the charging instrument plainly describes the offense and defendant acknowledges that he read, understood, and discussed with his attorney that legal document. *United States v. Parkins,* 25 F.3d 114, 117–18 (2d Cir.1994).

■■■ Judge Scullin failed to comply with Rule 11(c)(1). The district court's effort to ensure that Andrades understood the nature of the conspiracy charge was limited to Judge Scullin reading the charge and eliciting a "yes, sir" from Andrades. The district court elicited a similar response from Andrades' lawyer regarding Andrades' understanding of the plea agreement. Judge Scullin did not describe the elements of the offense in his own words to Andrades. The indictment that Judge Scullin read did not outline the elements of the offense or relevant circumstances. Furthermore, Judge Scullin did not elicit explanations of the charges from the government. Defense counsel advised the court that he had discussed the plea agreement with his client, but that document did not describe the elements of conspiracy or relevant circumstances. We can "presume that in most cases [that] defense counsel routinely explain the nature of the offense in sufficient

detail to give the accused notice of what he is being asked to admit." *Oppel v. Meachum,* 851 F.2d 34, 38 (2d Cir.1988) (quoting *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)). Based on the record below, however, we cannot determine that Andrades understood the nature of the conspiracy charge. In order to show a conspiracy, the government must establish the fact of a criminal agreement among individuals who are neither government agents nor confidential informants. *United States v. Hendrickson,* 26 F.3d 321, 333 (2d Cir.1994). The indictment charging Andrades described two drug sales. One, which took place on August 16; 1996, involved defendant and a confidential informant. The other, which took place on August 27, 1996, involved defendant, two confidential informants, and an individual known as Crunch. At the time of his sentencing, Andrades disputed the nature of his involvement with Crunch and protested his innocence on the grounds that he did not sell the drugs, even though he received a share of the sale proceeds. This confused statement further undermines any conclusion that Andrades understood the conspiracy charge. Because the district court made no factual inquiry during the plea allocution, we have no way to determine whether Andrades understood and admitted that he was accused of conspiring with Crunch, a necessary element of the conspiracy charge.

Also troubling is the district court's failure to inquire into Andrades' mental competence after defendant told Judge Scullin that he had a tenth-grade education and was an untreated crack and marijuana addict. *See United States v. Rossillo,* 853 F.2d 1062, 1065 (2d Cir.1988). While these inquiries may have been legally sufficient, under the circumstances of this case Andrades' untreated addiction and limited education cast additional doubt on his ability to understand the crime to which he was pleading guilty.

Unlike the facts of *Maher,* this record as a whole does not demonstrate that Andrades understood the nature of the charges against him. In *Maher,* the district court personally addressed defendants, who admitted each offense element pertaining to their conduct,

and the defendants repeatedly acknowledged their guilt, that they had read the indictment, and that they had discussed the charges with their attorneys. *Maher*, 108 F.3d at 1523–24. None of those assurances is present in this case. Based on this record, Judge Scullin did not determine that Andrades understood the nature of the conspiracy charge to which he pleaded guilty.

### B. Factual basis

 There also is no specific dialogue that must take place in order to comply with Rule 11(f)'s requirement that the district court satisfy itself regarding the factual basis for defendant's guilty plea. The court needs not evaluate evidence but must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *Maher*, 108 F.3d at 1524. The court may rely on defendant's own admissions, information from the government, or other information appropriate to the specific case. *Id.* (quotation and citation omitted). We have held that "a reading of the indictment to the defendant coupled with his admission of the acts described in it [is] a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." *United States v. O'Hara*, 960 F.2d 11, 13 (2d Cir.1992) (quoting *Montgomery v. United States*, 853 F.2d 83, 85 (2d Cir.1988)).

The district court failed to comply with Rule 11(f)'s requirement that the court establish a factual basis for defendant's guilty plea. At the time of Andrades' plea, Judge Scullin did not elicit any information from defendant or the government. Instead, the court merely read the bare bones conspiracy charge from the indictment, which did not identify any coconspirators. Importantly, as noted above, there is no evidence at the time Andrades entered his plea that Andrades conspired with individuals who were not government agents or informants. Because defendant disputed the nature of his involvement in the drug sale with Crunch, the only alleged coconspirator who was not an informant, and the court conducted a sentencing

hearing and made factual findings regarding this sale, we cannot determine that a factual basis for Andrades' conspiracy charge existed at the time of his plea.

Based on the lack of information in the indictment and the district court's failure to make a factual inquiry of Andrades, the government, or any other source at the time of Andrades' guilty plea, we hold that the record at that critical time contained no facts establishing the identity of defendant's co-conspirators or other necessary facts. The district court therefore committed legal error in failing to establish a factual basis for the guilty plea. The government argues in the alternative that any error was harmless because other facts in the record supported the charge, even though the district court established those facts after Andrades pleaded guilty. Because we already vacate defendant's guilty plea on the basis of the Rule 11(c)(1) violation, we decline to decide (1) whether the harmless error analysis of Rule 11(h) applies to a Rule 11(f) violation, and (2) if harmless error analysis does apply, whether Judge Scullin's error in this case was harmless because it did not affect Andrades' substantial rights.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed. We vacate appellant's guilty plea and remand this matter to the district court for further proceedings.