UNITED STATES, Appellee,

v.

Samuel McFADDEN, a/k/a Garry McFadden, a/k/a James McCoy, a/k/a Gary McFadden, Defendant–Appellant.

No. 00–1254.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 2000.

Decided Jan. 18, 2001.

ta E. Lynch, U.S. Attorney, Jo Ann M. Navickas, Assistant U.S. Attorney, of counsel), New York, NY, for Appellee.

Before CABRANES, POOLER, and KATZMANN, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Samuel McFadden[1] appeals from a judgment entered in the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*) on March 30, 2000, convicting him following a guilty plea of possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1),[2] and sentencing him principally to imprisonment for 180 months. McFadden entered a conditional plea under Rule 11(a)(2) of the Federal Rules of Criminal Procedure,[3] reserving the right to challenge the District Court's denial of his motion to suppress the firearm found on him during a search incident to his seizure by the police. On appeal, McFadden raises this issue and, in addition, argues that there was no factual basis for his plea.

**I.**

On June 7, 1999, at about 11:00 a.m., as New York City police officers Valois Nieves, Rafael Medina, and Hugo Fermin were sitting in a marked police van on Halsey Street in Brooklyn, Officer Nieves spotted McFadden riding his bicycle on the sidewalk. Nieves asked Medina to call McFadden over in order to issue him a summons for violating Section 19–176(b) of New York City's Administrative Code,

Steven M. Statsinger (The Legal Aid Society, Federal Defender Division, Appeals Bureau), New York, NY, for Defendant–Appellant.

Nikki Kowalski, Assistant U.S. Attorney, Eastern District of New York (Loret-

1. The original caption on appeal lists appellant's various aliases, including "Samuel McFadden." Since Samuel McFadden is in fact appellant's name, we have modified the caption to remove this name from the list of aliases.

2. In relevant part, 18 U.S.C. § 922(g)(1) provides:

   It shall be unlawful for any person—
   (1) who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year ... [to] possess in

or affecting commerce, any firearm or ammunition....

3. Rule 11(a)(2) provides:

   **Conditional Pleas.** With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

which prohibits riding a bicycle on the sidewalk.[4] Medina did so, and McFadden complied, approaching the van. Nieves then asked McFadden for photo identification, but McFadden was not carrying any.

It is unclear whether Medina instructed Nieves to get out of the van and search McFadden or whether Nieves got out of the van on his own initiative. It is also unclear whether Nieves told McFadden to raise his arms or whether McFadden spontaneously raised them—Nieves testified to the former, Medina to the latter. In any event, it is undisputed that McFadden raised his arms and repeatedly said "You got me"; that he then said, "I have a gun"; that Medina saw the gun tucked into a weight-lifter's belt McFadden was wearing; that Medina removed the gun, a .45 caliber Colt revolver loaded with hollow point bullets; and that Medina arrested McFadden.

Following his indictment, McFadden moved to suppress the firearm. After a hearing on December 10, 1999, the District Court orally denied the motion. McFadden and the government then entered into a conditional plea agreement reserving McFadden's right to challenge the denial of the motion to suppress, and on December 13, 1999, the Court accepted the plea. On March 29, 2000, the Court sentenced McFadden. This timely appeal followed.

## II.

■ We begin by considering McFadden's challenge to the factual basis for his plea.

■ Only recently we held that in order to make out an offense under 18 U.S.C. § 922(g)(1), "the government must prove that (1) the defendant possessed a firearm, (2) the defendant had a prior felony conviction, and (3) the firearm was possessed in

or affecting interstate commerce." *United States v. Moore*, 208 F.3d 411, 412 (2d Cir.2000). McFadden argues that the District Court failed to ascertain at the plea colloquy whether the gun he was carrying "was possessed in or affecting interstate commerce." Accordingly, McFadden contends that the plea colloquy did not comply with Federal Rule of Criminal Procedure 11(f), which requires a district court to ensure that a factual basis exists for a plea of guilty before accepting it.[5]

■ This argument is unpersuasive. Pursuant to Rule 11(f), a district court must assure itself "that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir.1997). To this end, a district court "may rely on [the] defendant's own admissions, information from the government, or other information appropriate to the specific case." *United States v. Andrades*, 169 F.3d 131, 136 (2d Cir.1999). A court need not find that a jury would return a verdict of guilty, or even that it is more likely than not that the defendant is guilty. *See Maher*, 108 F.3d at 1524. Instead, "a reading of the indictment to the defendant coupled with his admission of the acts described in it [provides] a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." *Andrades*, 169 F.3d at 136 (quoting *United States v. O'Hara*, 960 F.2d 11, 13 (2d Cir.1992)).

In the instant case, the transcript of the plea colloquy reveals that the District Court closely paraphrased the indictment, and that McFadden admitted to the conduct described therein. The Court explained the charge as follows:

---

**4.** This section provides: "No person shall ride a bicycle upon any sidewalk unless permitted by an official sign." N.Y.C.Admin.Code § 19–176(b) (West 1999).

**5.** Rule 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

The charge against you, Mr. McFadden, is that on June 7, in Brooklyn, you . . ., having been previously convicted of crimes punishable by imprisonment for more than a year, knowingly and intentionally possessed a firearm in and affecting commerce.[6]

The Court then inquired whether McFadden had discussed the charge with his lawyer, and McFadden replied that he had. In the course of a careful review of the matters prescribed by Rule 11, the Court asked McFadden if he had also reviewed the plea agreement with his attorney, to which McFadden responded in the affirmative. The Court then asked him whether he would like to review the plea agreement again, and McFadden said that he would. The Court then paraphrased the charge once more; briefly reviewed other aspects of the agreement including the conditional aspect of the plea; and concluded by asking, "Do you understand what all that means?" McFadden replied that he did.

The plea colloquy in this case involved significantly more than "a reading of the indictment to the defendant coupled with his admission of the acts described in it," *Andrades*, 169 F.3d at 136 (internal quotation marks omitted), which would have been entirely adequate to establish a factual basis. At the colloquy, McFadden indi-cated that he had discussed both the indictment and the plea agreement with his lawyer; the Court closely paraphrased the indictment—which has not been challenged as inadequate in any respect—and obtained McFadden's admission of the acts alleged in it; and the Court explained the charge once again to ensure that McFadden understood the charges to which he was pleading guilty. In accepting the plea, the Court relied "on the defendant's own admissions, information from the government, or other information appropriate to the specific case," as it was required to do. *Id.* Under these circumstances, it is clear that the District Court established a sufficient factual basis for the plea and thus that McFadden's Rule 11(f) challenge fails.

### III.

We next consider McFadden's argument that the firearm found on him when he was seized was the fruit of an illegal search because the police did not have a reasonable suspicion to believe he was committing a crime and were therefore not authorized to seize him.[7]

■ Under New York law, the police may arrest someone without a warrant for a "petty offense." N.Y.CRIM.PROC.LAW

---

6. The Court's paraphrase of the indictment was accurate. In relevant part, the indictment reads:

> On or about June 7, 1999, within the Eastern District of New York, the defendant GARY McFADDEN, also known [by three other names including Samuel McFadden], having been previously convicted in a court of crimes punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess a firearm in and affecting commerce.
> (Title 18, United States Code, Sections 922(g)(1), 924(e)(1) and 3551 *et seq.*)

7. By the time Officer Medina saw the gun tucked into McFadden's belt, McFadden had plainly been "seized" by the police because at that point "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Accordingly, the police officers' actions with re-gard to McFadden had to be "founded upon an objective justification," *id.* at 551, 100 S.Ct. 1870, whether the seizure amounted to an investigatory stop (in which case the required justification was merely a "reasonable suspicion") or a full-blown arrest (in which case "probable cause" was required). *United States v. Bayless*, 201 F.3d 116, 132–33 (2d Cir.2000).

In this case, we need not determine whether, *when the gun was found*, the seizure was still a stop, or whether it had already ripened into an arrest. The officers *saw* McFadden riding a bicycle on the sidewalk. Accordingly, if riding a bicycle on the sidewalk provides a basis for seizing a person under New York law, *see post* at **[10:1–11:7]**, the officers had probable cause to arrest McFadden and, *a fortiori*, they had reasonable suspicion to stop him as well.

§§ 140.10(1)(a), 140.10(2) (McKinney's 1992).[8] Petty offenses include traffic infractions. *See id.* at § 1.20(39).[9] The police also have discretion to issue a summons for a traffic infraction. *See* N.Y.Veh. & Traf.Law §§ 225(1) and 226(1) (McKinney's 1996). According to their testimony in this case, the police officers stopped McFadden because they believed that he was violating Section 19–176(b) of New York City's Administrative Code and thereby committing a traffic infraction. Although they intended to issue a summons, McFadden's lack of identification ruled out this option, and the officers elected to arrest him instead.

Section 19–176(b) provides that "[n]o person shall ride a bicycle upon any sidewalk unless permitted by an official sign." It is true, as McFadden argues, that the Government presented no evidence that such a sign was not posted on Halsey Street. However, the District Court held that Section 19–176(b) was inapplicable for a different reason: namely, that the police were not authorized to arrest McFadden under Section 19–176(b) because this provision does not describe a "traffic infraction."

The District Court concluded that the offense described in Section 19–176(b) is not a traffic infraction because subsection (c) of that provision implicitly imposes only a civil penalty in the case of such a violation, where there is no "substantial risk of physical injury to another person." Subsection (c) provides:

A person who violates subdivision b of this section *under circumstances which create a substantial risk of physical injury to another person* shall be guilty of a misdemeanor, punishable by a fine of not more than one hundred dollars and imprisonment for not more than twenty

days or both such fine and imprisonment. Such person shall also be liable for a civil penalty of not more than one hundred dollars which may be recovered in a proceeding before the environmental control board.

N.Y.C. Admin. Code § 19–176(c) (West 1999) (emphasis added). The Court interpreted this passage to provide *only* for a civil penalty—not imprisonment—for riding a bicycle on a sidewalk in circumstances that do *not* "create a substantial risk of injury to another person." The Court reasoned that because McFadden was not riding his bicycle under circumstances creating such a risk of injury, the applicable penalty in this case would only have been a fine, and a summons for this violation would not have constituted "an information which can be presented to the criminal court." 12/10/99 Transcript at 98. Accordingly, the Court concluded that an arrest for a violation of Section 19–176(b) would have been illegal, and that the fruit of any search conducted incident to a Section 19–176(b) arrest would therefore have to be suppressed.

However, the District Court went on to determine that McFadden had violated Section 1234(a) of the New York State Vehicle and Traffic Law (the "VTL"), which regulates the use of bicycles on the "roadway." That statute provides:

§ 1234. Riding on roadways, shoulders, bicycle or in-line skate lanes and bicycle or in-line skate paths

(a) *Upon all roadways,* any bicycle or in-line skate shall be driven either on a usable bicycle or in-line skate lane or, if a usable bicycle or in-line skate lane has not been provided, near the right-hand curb or edge of the roadway or upon a usable right-hand shoulder in such a manner as to prevent undue interfer-

8. Together, Sections 140.10(1)(a) and 140.10(2)(a) authorize a police officer to arrest a person for a petty offense if the officer "has reasonable cause to believe that such person has committed such offense in his presence" and "[s]uch offense was committed

or believed by [the officer] to have been committed within the geographical area of such police officer's employment."

9. Section 1.20(39) defines a "a violation or a traffic infraction" as a "petty offense."

ence with the flow of traffic except when preparing for a left turn or when reasonably necessary to avoid conditions that would make it unsafe to continue along near the right-hand curb or edge. Conditions to be taken into consideration include, but are not limited to, fixed or moving objects, vehicles, bicycles, in-line skates, pedestrians, animals, surface hazards or traffic lanes too narrow for a bicycle or person on in-line skates and a vehicle to travel safely side-by-side within the lane.

(emphasis added). Acknowledging that this is not "the most exquisitely drafted statute one can imagine," the Court nevertheless concluded that Section 1234(a) prohibits the riding of bicycles on the sidewalk, and that McFadden had violated this statute. The Court then reasoned that an arrest was proper pursuant to Section 1234(a) because a violation of this provision *does* constitute a traffic infraction by operation of Section 155 of the VTL.[10] Accordingly, the Court concluded that the search of McFadden was a lawful search because it was conducted incident to a legal arrest.

■ We disagree with the basis for the District Court's denial of the motion to suppress the gun, though not with its ultimate conclusion that the arrest of McFadden was proper and lawful. Based on the District Court's findings, the undisputed facts, and our review of the text of the relevant provisions in the VTL, we conclude that McFadden violated Section 19–176(b) of the Administrative Code, not Section 1234(a) of the VTL. In addition, we conclude that Section 19–176(b) does set forth a traffic infraction, that the officers had probable cause to arrest McFadden, and that the firearm was therefore the fruit of a lawful search.

The term "traffic" is defined in the VTL as "[p]edestrians, ridden or herded animals, vehicles, bicycles, and other convey-

ances either singly or together while using any highway for purposes of travel." *See* N.Y.Veh. & Traf.Law § 152 (McKinney's 1996). A "traffic infraction" is a violation of "any law, ordinance, order, rule or regulation regulating traffic which is not declared by this chapter or other law of this state to be a misdemeanor or a felony." *Id.* at § 155. The term "traffic" thus includes bicycles, and Section 19–176(b) is accordingly a "law, ordinance, order, rule or regulation regulating traffic"—that is, setting forth a traffic infraction.

McFadden argues that the term "highway" excludes the sidewalk and, therefore, that Section 19–176(b) does not regulate "traffic" because a bicycle ridden on the sidewalk is not "traffic" under the VTL. This argument is unpersuasive because following the somewhat confusing provisions of New York's traffic laws makes clear that, in fact, a highway—in a technical sense—includes the sidewalk.

We must read the relevant provisions of the VTL as a whole. The VTL defines a sidewalk as "[t]hat *portion of a street* between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, intended for the use of pedestrians." N.Y.Veh. & Traf.Law § 144 (McKinney's 1996) (emphasis added). As the text of this provision indicates, under the VTL a "sidewalk" is *an integral part of a "street."* The VTL defines "street" and "highway" identically—each is defined as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." *Id.* at § 148 (street), § 118 (highway).

■ In other words, under the VTL the terms "street" and "highway" are synonymous, and each *encompasses* the sidewalk (along with the shoulder, slope, and roadway).[11] As a result, a bicycle ridden on

---

10. Section 155 of the VTL defines a "traffic infraction" to include a violation of "any law, ordinance, order, rule or regulation regulating traffic which is not declared by this chapter or other law of this state to be a misdemeanor or a felony."

11. Under the VTL, a "roadway" is "[t]hat portion of a highway improved, designed,

the "sidewalk" *is* a bicycle ridden on the "highway" (or, for that matter, the "street"). As such, bicycle traffic on a sidewalk is "traffic" under the VTL, and the general prohibition in Section 19–176(b) against bicycle-riding on the sidewalk sets forth a "traffic infraction." McFadden concedes that the officers were authorized to seize him if they had an adequate justification for believing that he was committing a traffic infraction.[12] McFadden also argues, however, that even if Section 19–176(b) sets forth a traffic infraction, the police did not establish that they had reason to suspect that he was violating this provision because the government did not introduce any evidence that there was a sign prohibiting the riding of bicycles on the particular sidewalk where they stopped him.

We disagree. If "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed," probable cause to arrest exists. *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir.1987) (internal quotation marks omitted). In light of the general prohibition under New York law against riding bicycles on the sidewalk—albeit one with some exceptions, such as the exception in Section 19–176(b) for sidewalks that have the relevant "official sign"—the officers had sufficient grounds to believe that McFadden was committing a traffic infraction when they observed him riding his bicycle on the sidewalk.

In sum, we hold that the search in this case was a lawful search incident to a proper seizure. Accordingly, we hold that the District Court properly denied McFadden's motion to suppress the firearm, and we affirm the judgment of the Court.

## IV.

For the reasons set forth above, we hold that:

(1) The District Court amply fulfilled the requirement of Federal Rule of Criminal Procedure 11(f) of ensuring, at the plea colloquy, that a factual basis existed for appellant's guilty plea;

(2) The District Court erred in basing its denial of appellant's motion to suppress on Section 1234(a) of New York's Vehicle and Traffic Law; and

(3) The District Court's denial of the motion to suppress was nevertheless warranted under Section 19–176(b) of New York's Administrative Code.

The judgment of the District Court is **AFFIRMED.**

---

marked, or ordinarily used for vehicular travel, exclusive of the shoulder and slope...." N.Y.VEH. & TRAF.LAW § 140 (McKinney's 1996). The "shoulder" is "[t]hat improved portion of a highway contiguous with the roadway" and the "slope" is "[t]hat portion of a highway exclusive of the roadway and shoulder." *Id.* at § 143a (shoulder), § 144a (slope).

12. The same reasoning leads us to the conclusion that a specific reference to "roadways" excludes the sidewalk and, therefore, that

Section 1234(a), set forth above in the text, *see ante* at 202–03, does not have anything to do with bicycle-riding on the sidewalk.

It is not clear why neither the government nor the District Court relied on § 4.07(3)(i) of the New York City Traffic Rules & Regulations, which—like Section 19–176(b) of the Administrative Code—provides that "[n]o person shall ride or operate a bicycle upon any sidewalk area unless permitted by sign." The government includes § 4.07(3)(i) in its appendix but makes no argument based on it.