**UNITED STATES of America,**
**Appellee,**

v.

**Larry MILLER, Defendant–Appellant.**

**Docket No. 00–1003.**

United States Court of Appeals,
Second Circuit.

· March 23, 2001.

Bruce R. Bryan, Syracuse, NY, for appellant.

Barbara D. Cottrell, Assistant United States Attorney for the Northern District of New York; Gregory A. West and Stephen C. Green, Assistant United States Attorneys, on the brief, for Daniel J. French, United States Attorney for the Northern District of New York, Albany, NY, for appellee.

Present SOTOMAYOR, and KATZMANN, Circuit Judges, and

CHIN,* District Judge.

### SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from the judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*), it is hereby

ORDERED, ADJUDGED AND DE-CREED that the judgment of the district court is AFFIRMED.

Defendant Larry Miller appeals from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*) convicting him upon his plea of guilty to one count of participating in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h), and sentencing him principally to 210 months' imprisonment.

According to the indictment, defendant defrauded the governments of the United States and Canada of taxes on sales of cigarettes (and later alcohol) by smuggling those items through the St. Regis Mohawk Indian Reservation—which straddles the U.S./Canada border—into Canada for sale on the Canadian "black market." Certain proceeds of such sales were used by the conspirators to purchase new shipments to sell in the same manner. The indictment also charged that "[i]t was a . . . part of the scheme to defraud that the tobacco and liquor to be utilized in the smuggling scheme would be purchased through interstate and international telephone calls, facsimile, and wire transmissions." Defendant pled guilty to Count 3 of the indictment pursuant to an agreement filed on November 4, 1998.

Defendant raises a variety of challenges to both his conviction and sentence:

### Validity of Plea

■ Defendant claims that his plea of guilty is not valid because the trial judge did not ascertain his understanding of the nature of the charges to which he was pleading guilty. *See* Fed.R.Crim.P. 11(c). In carrying out this task, a district court is not required to make a "ritual[ized]" listing of the elements of a crime, *see McCarthy v. United States*, 394 U.S. 459, 467 n. 20, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (quoting *Kennedy v. United States*, 397 F.2d 16, 17 (6th Cir.1968)), or satisfy other formalistic requirements, as long as "the court determine[s] by some means that the defendant actually understands the nature of the charges." *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir.1997). Here the record when viewed as a whole makes clear that defendant understood the nature of the charges to which he was pleading guilty. Among other things, during the plea proceeding on November 5, 1998:

1) The court clerk read the portion of Count 3 that sets forth the elements of the conspiracy offense to which he was pleading guilty;

2) The defendant responded affirmatively when the court asked whether defendant had talked with his attorney about the nature of the charges and whether he understood that it was "basically . . . a conspiracy involving money laundering and smuggling goods into Canada and that kind of thing";[1] and

3) After the government had extensively detailed the facts that it would have proved in connection with defendant's role in the conspiracy at trial, including

---

* The Honorable Denny Chin of the United States District Court for the Southern District of New York, sitting by designation

1. The court also received an affirmative response after questioning defendant's attorney as to whether he had "advised [defendant] of his rights, the nature of the charges and the consequences of pleading guilty."

the role of wire fraud in that conspiracy, the court asked defendant whether he had heard the government's recitation and whether it accurately described his conduct. When defendant agreed that it was "pretty close," the court explored further and had defendant identify what parts of the recitation were inaccurate and how they should be corrected, and continued to elicit such information from defendant until defendant was able to agree that his conduct had been properly described.

In addition, the plea agreement, which defendant signed on the date of the plea proceeding, represented that he had read, understood, and accepted its contents, and also set forth both the elements of the offense charged in Count 3 and the specific facts that satisfied those elements.[2]

Based on the above, to the extent that any deviation from the procedure required by Rule 11 occurred, any such error is clearly harmless because the record as a whole reveals that the defendant understood the nature of the charges to which he was pleading guilty. *See Maher,* 108 F.3d at 1521–24 (upholding plea based on district court's general discussion of offense with each defendant; signed plea petitions and in-court statements indicating that defendants had reviewed the indictment, discussed it with their attorneys, and understood it; and defendants' acknowledgment that they had committed the acts described by the government); *see also* Fed.R.Crim.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.").[3]

We similarly reject defendant's claim that the judge did not inform him of the mandatory minimum sentence, for the simple reason that 18 U.S.C. § 1956(a)(1)(A)(i), the substantive violation that defendant pled guilty to conspiring to commit, does not provide any minimum penalty. *See* Fed.R.Crim.P. 11(c)(1) (court required to inform defendant of "the mandatory minimum penalty provided by law, *if any*") (emphasis added).

*Alleged Government Breach Of Plea Agreement*

Defendant argues that the government breached the plea agreement by making a bad faith refusal to move for a downward departure pursuant to section 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G.") based on the alleged "substantial assistance" provided by defendant. The plea agreement provided that "[t]he decision to make a motion for a departure under the Sentencing Guidelines based upon the defendant's assistance shall rest in the sole discretion of the United States Attorney for the Northern District of New York." We have held that

---

**2.** We note that at the hearing, defendant also admitted to allegations in the indictment relating to the forfeiture of his ownership interest in "property involved in and/or proceeds derived from or traceable to the scheme to which he is pleading guilty," and agreed to the entry of a forfeiture judgment up to the full amount involved in the money laundering conspiracy, $79,672,469.62.

**3.** We note as additional support that the record here contains key elements that were absent in cases where we have invalidated pleas. *See, e.g., United States v. Andrades,* 169 F.3d 131, 133 (2d Cir.1999) (finding that, among other things, the district court "failed to elicit from defendant or the government a statement of the factual basis for the plea" and noting that plea agreement did not "recite the elements of the crime of conspiracy or the factual basis for the charge"); *United States v. Blackwell,* 199 F.3d 623, 626 (2d Cir.1999) (finding, among other things, that district court "never asked [the defendant] whether he understood the nature of the offense to which he was entering a guilty plea," and neither explained the elements of conspiracy nor "read the indictment to him").

such a condition requiring the subjective satisfaction of the United States Attorney "is not met if the obligor is honestly, even though unreasonably, dissatisfied." *United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.1990) (internal quotation marks omitted).

Here, the government provided sufficient evidence of its honest belief that defendant had breached the plea agreement by failing to provide complete and truthful financial disclosure of his forfeitable assets, thus freeing the government of any obligation it may have had to recommend a downward departure. *See* Plea Agreement, ¶ 7.7. In the months leading up to sentencing, the government demonstrated that its view was based on, among other things, tape recordings of defendant's phone conversations made while he was incarcerated and defendant's failure to pass a December 1, 1999 polygraph test in which he was questioned about his assets. Although the defendant offered what the district court characterized as "plausible" explanations for some of the evidence pointed to by the government, it correctly found that such explanations did not mean the government's position was one taken in bad faith.

*Claim That Money Laundering Guideline Should Not Have Been Applied*

■ Defendant was sentenced under the guideline for money laundering, *see* U.S.S.G. § 2S1.1 (1998), which corresponded to the statute he pled guilty to violating. Defendant claims that the judge should have used a different guideline carrying lesser penalties because his case was allegedly "atypical" of those that the money laundering guideline was intended to target.[4] The sentencing adjustment defendant seeks would appear to be proscribed by this Court's well-settled rule that we lack power to review denials of downward departures from the guidelines where, as here, the judge is aware of his authority to depart but simply chooses not to do so. *See United States v. Piervinanzi,* 23 F.3d 670, 685 (2d Cir.1994). Defendant, relying on the Third Circuit's decision in *United States v. Smith,* 186 F.3d 290 (3d Cir. 1999), claims that appellate review of the initial selection of an applicable guideline is a question of law distinct from the discretionary decision not to depart from a guideline. *Id.* at 297–98. We need not consider whether to adopt the Third Circuit's approach here because, even if we were to review the question, it is clear that defendant's conduct falls within the "heartland" of the money laundering guidelines. As the district court correctly found, the alleged profits here were of a tremendous magnitude and were used to facilitate further "substantial criminal activity."

*Denial Of Sixth Amendment Right to Counsel*

■ Defendant claims that the government interfered with his ability to obtain funds to pay for an attorney, and that he was therefore forced to accept an attorney assigned to him by the court. Defendant does not contest the government's ability to seize the assets connected with or derived from his criminal activity pursuant to the forfeiture provisions of 18 U.S.C. § 982, notwithstanding any effect on his ability to pay for an attorney. *See United States v. Monsanto,* 491 U.S. 600, 614–15, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (holding that "neither the Fifth nor the Sixth Amendment requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's

---

4. Defense counsel claimed in the district court that "the guideline used to sentence [defendant] should be the smuggling guideline or the fraud guideline," but on appeal, now argues that the more appropriate guideline would have been a guideline dealing with tax fraud or conspiracy to evade a tax.

legal fees," and finding that such assets may be seized pretrial "based on a finding of probable cause to believe the assets are forfeitable"). Furthermore, while defendant claims that he was denied access to certain other assets that the indictment and plea agreement listed as substitutes for his forfeitable property, and that such denial violated the prohibition on pre-trial seizure of "substitute assets" set forth in *United States v. Gotti,* 155 F.3d 144 (2d Cir.1998), the government is correct that defendant has pointed to no "substitute assets" that have been unlawfully seized. Rather, defendant's argument appears to rely on the government's opposition to, and scrutiny of, his efforts to obtain funds from friends, family members, and business associates. However, the record is clear that the government's actions were based on a legitimate concern that the defendant was trying to conceal the forfeitable nature of these funds.

▋▋ Finally, we also affirm the district court's refusal to allow defendant's originally-retained counsel Donald I. Bierman, who withdrew from representing defendant in December 1997 due to defendant's financial problems, to represent defendant in place of defendant's assigned counsel at the sentencing stage of the proceedings. Specifically, in an October 12, 1999 motion, Bierman sought permission to appear and a continuance of the sentencing proceeding from October to December 1999, in part to accommodate his schedule. A trial court is under no duty to grant a continuance to allow for defendant's chosen counsel to substitute for his current counsel where the petitioner "fail[s] to allege any sufficient ground for wanting the delay." *United States ex rel. Baskerville v. Deegan,* 428 F.2d 714, 716–17 (2d Cir.1970). Here, as the court explained at the hearing on October 21, 1999, it received no indication from either defendant or Bierman that they thought defendant's assigned counsel was not "qualified or competent or shouldn't go ahead," and, moreover, the court knew from its own observations "that [defendant] was represented by counsel that was thoroughly familiar with the case." *See Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ("[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers").[5]

We have considered defendant's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.

---

**5.** In addition, the court noted that it had received no proof supporting Bierman's claim that he would be paid by defendant's brother from funds not connected to the defendant. After the court heard a taped conversation between the defendant and his brother provided by the government later in the same proceeding, the court reiterated this skepticism, stating:

> [C]ertainly the most telling conversation to me was the conversation with his brother, where moneys were talked about and payment and the next thing that shows up on my desk is an application for [the new attorney] to intervene in the case and assuring the court that the moneys came from the defendant's brother. Now I guess I know how that worked.

This evidence provided the court with an additional basis for denying defendant's request, as it is well-settled that "a defendant may not insist on representation by an attorney he cannot afford." *Wheat,* 486 U.S. at 159.