**UNITED STATES of America, Appellee–Cross–Appellant,**

v.

**Cesar COLON, Manuel A. Alvarez, Defendants,**

**Francisco Javier ESCOBAR, David A. Borras, Defendants–Appellants–Cross–Appellees.**

**Nos. 00–1230, 00–1660, 00–1617, 00–1661, 00–1623.**

United States Court of Appeals, Second Circuit.

Oct. 15, 2001.

Nathaniel Z. Marmur; Paul Shechtman, Stillman & Friedman, New York, NY, on the brief, for appellant Escobar.

Alexander Bunin, Federal Public Defender for the Northern District of New York & Vermont, Albany, NY, for appellant Borras.

Roberto Finzi, Assistant U.S. Attorney, Southern District of New York; Mary Jo White, U.S. Attorney, Daniel M. Gitner, Jamie L. Kogan, Assistant U.S. Attorneys, Southern District of New York, New York, NY, on the brief, for appellee.

Present MESKILL, JACOBS, and CABRANES, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments of said District Court be and hereby are AFFIRMED.

Francisco Escobar and David Borras appeal from judgments of conviction after pleading guilty to two counts each of violating 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846 in the United States District Court for the Southern District of New York, Hellerstein, *J.* They were sentenced to concurrent terms of 151 months and 168 months, respectively, on each count, to be followed by five years of supervised release and the mandatory special assessments of $200 for each defendant.

Borras challenges the plea colloquy, claiming Magistrate Judge Grubin failed to determine that Borras understood the nature of the charges and failed to establish a factual basis for the plea. Borras also claims that the court erred at sentencing by applying a two-point upward departure for his role in the offense. (In his brief he mistakenly calls the departure under U.S.S.G. § 5K2.0 an "adjustment" pursuant to U.S.S.G. § 3B1.1.)

On appeal, Escobar only claims that the court erred as a matter of law in departing upward. The government cross-appeals the court's refusal to impose upward adjustments under U.S.S.G. § 3B1.1 for Escobar and Borras, and its decision to award Escobar a two-level "safety-valve" reduction under U.S.S.G. § 2D1.1(b)(7).

We affirm the judgments below.

The following facts are not in dispute. Escobar contacted Borras, a resident of New York City, and asked him if he would be interested in buying drugs. Escobar had already made contact with "Pablo," a confidential police informant, who led Escobar to believe that Pablo could provide large quantities of cocaine for sale. Borras declined Escobar's invitation, but introduced Escobar to Cesar Colon, whom Borras thought would be interested in purchasing the cocaine. Escobar and Borras subsequently met with Pablo on several occasions and negotiated the quantity of drugs to be purchased and the amount of the down payment to be required from the buyers, eventually agreeing on a quantity of fifty kilograms of cocaine in exchange for a down payment of $200,000 in cash.

On June 23, 1999, in midtown Manhattan, police arrested Borras, Escobar and three others in the midst of the scheduled drug exchange. The two-count indictment, filed on July 6, 1999, charged Borras, Escobar and two co-defendants with conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine, and attempting to distribute and possess with intent to distribute approxi-

mately 50 kilograms of cocaine. *See* 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 846. Co-defendants Cesar Colon and Manuel A. Alvarez each pleaded guilty, were sentenced separately, and are not parties to this appeal.

On January 20, 2000, Borras entered a guilty plea before Magistrate Judge Grubin in the Southern District of New York. On January 21, 2000, Escobar entered a guilty plea before Judge Hellerstein. On August 30, 2000, after conducting a hearing pursuant to *United States v. Fatico,* 579 F.2d 707 (2d Cir.1978), Judge Hellerstein sentenced Borras and Escobar to terms of incarceration of 168 and 151 months, respectively.

Borras contends that Magistrate Judge Grubin did not properly determine that Borras understood the nature of the charges to which he pleaded guilty, as required by Federal Rule of Criminal Procedure 11(c)(1). Borras further contends that Magistrate Judge Grubin did not find a factual basis for the guilty plea, as required by Rule 11(f). Borras' claims are without merit.

 In making an inquiry to determine whether a defendant understands the charges to which he is pleading guilty, "[a] district court is not required to follow any particular formula." *United States v. Andrades,* 169 F.3d 131, 135 (2d Cir.1999). The court may summarize the charges in its own words or by reading the indictment to the defendant. *United States v. Maher,* 108 F.3d 1513, 1521 (2d Cir.1997). Even if the defendant's own recitation of his conduct is insufficient to satisfy the elements of the charge, Rule 11(c)(1) is satisfied " 'where the charging instrument plainly describes the offense and defendant acknowledges that he read, understood, and discussed with his attorney that legal document.' " *United States v. Blackwell,* 199 F.3d 623, 626 (2d Cir.1999) (quoting *Andrades,* 169 F.3d at 135).

 The Magistrate Judge began the plea proceeding by summarizing in her own words the charges in the indictment, after which she asked Borras if he had seen a copy of the indictment. Borras responded, "Yes, I have." The Magistrate Judge then asked Borras, "Have you had a sufficient opportunity to speak with Mr. Elso about the charges and about any defenses you may have to them?" Borras responded, "Yes." Following this colloquy, Borras pleaded guilty to the charges in the indictment.

The indictment states that Borras met with Escobar and Pablo, the police informant, one day prior to the arrest. The indictment also states that Borras met again with Escobar and Pablo, as well as two other defendants, on the date of the arrest. The indictment states that during this meeting Borras said that he suspected that police were surveilling them. Finally, the indictment states that Borras gave an undercover police officer the keys to the "money car."

The inquiry conducted by Magistrate Judge Grubin, together with the charges and acts described in the indictment, which Borras acknowledged that he saw and discussed with his attorney, are enough to satisfy the requirements of Rule 11(c)(1). *See Andrades,* 169 F.3d at 135. We thus conclude that Magistrate Judge Grubin properly determined that Borras understood the nature of the charges to which he was pleading guilty.

 "There also is no specific dialogue that must take place in order to comply with Rule 11(f)'s requirement that the ... court satisfy itself regarding the factual basis for defendant's guilty plea." *Id.* at 136. The court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *Maher,* 108 F.3d at 1524.

The court may rely on the defendant's admissions or on information from the government or defense counsel, as well as other information that is appropriate to the specific case. *Id.* (citing Fed. R.Crim.P. 11 Advisory Comm. Note (1974) (Rule 11(f))).

■ Magistrate Judge Grubin, after determining that Borras understood the nature of the charges to which he was pleading guilty, asked Borras to describe his conduct that justified his guilty plea. Borras told the court that Escobar had come to him and asked him if he would be interested in buying drugs. When Borras declined, Escobar then asked if Borras "could find someone to buy or if [he] knew someone to buy." Borras again declined, but then relented and told Escobar that he would introduce him to Cesar Colon. In Borras' words, "I introduced Mr. Colon to him so that they could do their deal."

Later in the proceeding, after a dialogue between the court and counsel for the government and the defense, the following conversation took place:

COURT: Mr. Borras, with respect to Count 2, is that based on the same—

DEFENSE COUNSEL: The same.

COURT:—the same circumstances?

DEFENSE COUNSEL: Yes, your Honor.

COURT: I see. All right [sic].

Later in the proceeding, the following conversation took place:

COURT: Mr. Borras, this plan, this plan whereby you introduced Mr. Colon to Mr. Escobar to buy the drugs, was the agreement to involve at least five kilograms of cocaine?

DEFENDANT: Yes.

COURT: How do you know that?

DEFENDANT: Because Mr. Escobar spoke to me of that amount.

COURT: All right [sic]. Is there anything further?

PROSECUTION: Nothing further, your Honor.

DEFENDANT: He was offering it to me.

COURT: I understand.

These exchanges between the court, Borras and his attorney are sufficient to satisfy Rule 11(f). Borras acknowledged that he introduced Escobar to Colon "so that they could do their deal." Escobar had come to Borras asking Borras to purchase drugs. When Borras declined and offered to introduce Escobar to Colon, he knew that the purpose of this introduction was to facilitate a drug purchase. Further, Borras acknowledged that there was a "plan whereby [he] introduced Mr. Colon to Mr. Escobar to buy the drugs."

While we may wish that the court had undergone a more thorough examination of the defendant, all that is required is that the court satisfy itself that the conduct the defendant admits to is the crime charged. *Maher*, 108 F.3d at 1524.

Escobar argues that because Judge Hellerstein concluded that Escobar did not deserve an upward adjustment for his role in the crime pursuant to § 3B1.1 of the Sentencing Guidelines, Judge Hellerstein erred in upwardly departing under § 5K2.0 of the Guidelines. The government agrees that Judge Hellerstein erred in upwardly departing, arguing instead that he was obligated to impose an upward adjustment pursuant to § 3B1.1 of the Guidelines for Escobar's organizational role. The government also disputes the court's decision to grant Escobar a "safety-valve" reduction pursuant to § 2D1.1(b)(7), for which he would only be eligible if he "was not an organizer, leader, manager, or supervisor of others in the offense." U.S. Sentencing Guidelines Manual § 5C1.2(4) (2000). "Organizer" as used in § 5C1.2(4) means "a defendant who receives an adjustment for an aggra-

vating role under § 3B1.1." *Id* . § 5C1.2, cmt. n. 5.

■ "The United States Supreme Court has determined that, in reviewing a district court's decision to depart from the guidelines, appellate courts are to apply an abuse of discretion standard, because the decision to depart embodies the traditional exercise of discretion by the sentencing court." *Id.* § 5K2.0, cmt. (citing *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). A district court may depart from the Guidelines if it finds " 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " *Id.* § 5K2.0 (quoting 18 U.S.C. § 3553(b)). However,

> [b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District Courts have an institutional advantage over appellate courts in making these sorts of determinations, expecially as they see so many more Guidelines cases than appellate courts do.

*Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). We accept the district court's factual findings unless clearly erroneous. 18 U.S.C. § 3742(e).

■ When determining the role that a defendant played in a particular case, the court should consider " 'the degree of discretion exercised by him, the nature and degree of his participation in planning or organizing the offense, and the degree of control and authority exercised over other members of the conspiracy.' " *United States v. Paccione*, 202 F.3d 622, 624 (2d Cir.) (per curiam), *cert. denied*, 530 U.S. 1221, 120 S.Ct. 2232, 147 L.Ed.2d 261 (2000) (quoting *United States v. Beaulieau*, 959 F.2d 375, 379–80 (2d Cir.1992)).

■ Judge Hellerstein described the criminal conspiracy in this case as a "loose coalition of individuals, depending very much for coalescence on the organizational activity of Mr. Escobar and Mr. Borras." Judge Hellerstein explicitly found, however, that this case presented a type of "entrepreneurial activity" that the "sentencing guidelines do not really focus on."

Judge Hellerstein found that Borras and Escobar performed the roles of "sophisticated broker[s]," and also stated that he was "reluctant not to find that the definition of organizer has been satisfied" because, "[a]ccording to the definitions set out in the application note, it did seem to have been satisfied." But the judge also stated that the particular facts of the case and actions of the defendants lead to "a degree of culpability that is of a character, of a kind that in my judgment has not been contemplated by the guidelines."

Because Judge Hellerstein did not find that Borras or Escobar were "organizers" under § 3B1.1 of the Sentencing Guidelines, he was not required to apply the upward adjustments sought by the government. Further, because Judge Hellerstein expressly found that Borras and Escobar were not "organizers" under § 3B1.1 he also was not precluded from giving Esco-

bar the benefit of the "safety-valve" reduction pursuant to §§ 2D1.1(b)(7) and 5C1.2 in light of Escobar's post-arrest cooperation.

We cannot conclude that Judge Hellerstein abused his discretion when upwardly departing for the role that Borras and Escobar played in the crime and in awarding Escobar "safety-valve" relief for his post-arrest cooperation.

The judgments of the district court are AFFIRMED.