**UNITED STATES of America**

v.

**Charles BELK, Defendant.**

**No. 01 CR 180(LTS).**

United States District Court,
S.D. New York.

Nov. 27, 2001.

Mary Jo White, United States Attorney for the Southern District of New York by David P. Burns, New York, NY, for the United States.

Legal Aid Society, Federal Defender Division, Southern District of New York, by Jennifer Brown, New York, NY, for the Defendant.

*OPINION*

SWAIN, District Judge.

Defendant Charles Belk[1] is charged in an indictment with possession of a firearm in violation of Title 18, United States Code, sections 922(g)(1) and 924(e), after having previously been convicted of a crime punishable by imprisonment in excess of one year and three different convictions for violent felonies. The matter is before the Court on defendant's motion to suppress physical evidence (the firearm) obtained by police in connection with his arrest and a statement made following his arrest.

Defendant's motion was initiated by a notice accompanied by an affirmation of defendant, in which Mr. Belk denied the material aspects of the Government's account in the pre-indictment Complaint of the events relating to his arrest. The affirmation reads in pertinent part as follows:

> I did not have my hand on my waistband. I did not ride my bicycle into any telephone booth. I did not throw any firearm. I did nothing to arouse the suspicion of police. I was arrested by New York City police officers after I refused to speak with them ... After my arrest, I was questioned and made statements to law enforcement officials.

Affirmation of Charles Blount, dated June 19, 2001 ("Belk Aff."), at ¶¶ 2–3. An evidentiary hearing was held on August 13 and October 4, 2001; the parties thereafter submitted letter briefs. In the course of the hearing, the Government proffered the testimony of two New York City police detectives and a lieutenant in the New York City Police Department ("NYPD"). The defense called an investigator and the

1. Mr. Belk also goes by the name Charles Blount, which he prefers to Belk. The Court will refer to him in this opinion by the name Belk, under which he was indicted.

**140**

Bureau of Alcohol, Tobacco and Firearms ("ATF") special agent responsible for coordinating the investigation that led to the pending charges. Mr. Belk did not testify. The Court, having had the opportunity to hear all of· the witnesses and to observe their demeanor in weighing the credibility of their testimony, has considered carefully all of the arguments and evidence presented in support of and in opposition to the motion. For the reasons that follow, the motion is denied in its entirety.

### FACTUAL BACKGROUND

The following material facts were established by a preponderance of the credible evidence presented at the hearing. At or about 11:45 p.m. on the night of September 13, 2000, NYPD Detective Joseph Mazzei ("Det.Mazzei") and then-Sergeant (now Lieutenant) James O'Sullivan ("Lt.O'Sullivan") were riding up Courtland Avenue in the Bronx in an unmarked police car driven ·by Detective John Hanlon ("Det.Hanlon"). (Tr. of Aug. 13, 2001 hearing ("8/13 Tr.") at 18–20.) They were on routine patrol in the 40th Precinct, in connection with the Bronx Street Crimes Unit of the NYPD, assigned to address any violent street crimes that might occur that evening. (*Id.* at 18–19.) At the corner of Courtland Avenue, a one-way street on which traffic flows in a northerly direction, and 152nd Street, Det. Mazzei, who was seated in the back seat of the car, observed Mr. Belk standing on the corner astride a bicycle. Mr. Belk had his left hand on the handlebars and his right hand grasping an object in his waistband. (*Id.* at 20–21, 62–63.) Although Det. Mazzei could not determine what the object was he perceived, based on his prior observations of civilians and officers and his own personal practices in the course of his law enforcement experience, he believed that Mr. Belk was holding the handle of a firearm. (8/13 Tr. at 21–22, 23.)

Shortly after the car had passed Mr. Belk, Det. Mazzei instructed Det. Hanlon to back up. After the car backed up to a position parallel with Mr. Belk, Det. Mazzei began to address Mr. Belk, stating, in substance, "Excuse me, can you hold up, can I talk to you?" (8/13 Tr. at 25–26.) Upon observing Mr. Belk after the car had reversed toward the defendant, Lt. O'Sullivan also perceived the defendant to be holding a weapon in his waistband. Although he could not see the object in defendant's waistband at the time, Lt. O'Sullivan's ·conclusion as to its nature was reached based on his training, observations and personal experience as a police officer. (8/13 Tr. at 128–29.)

Defendant began to ride his bicycle northbound, on the sidewalk, on Courtland Avenue, and at that time or shortly afterward began to say something to the effect of "[W]hat do you want, I didn't do nothing." (8/13 Tr. at 26,130.) Det. Mazzei, identifying himself as a police officer, continued to speak to Mr. Belk as the police vehicle ·drove alongside Mr. Belk; Mr. Belk continued to ride his bicycle, gaining speed, trying to avoid conversation with the officers and making statements to the effect that "There is no reason for me to stop for you, you can't stop me." (*Id.* at 26.) The officers did not leave the car, display weapons, command Mr. Belk to stop or attempt to cut him off. (*Id.* at 26–28, 131–32.)

A portion of the way up the block, Mr. Belk's bicycle appeared to hit an obstruction [2] and he and the bicycle fell to the

---

**2.** The Government's witnesses identified the obstruction as a telephone booth appended to the outside wall of a shop on Courtland Avenue. The evidence at the hearing established that there were at least two such booths in the block in which the encounter occurred.

ground. (8/13 Tr. at 27–28, 131–32.) When he fell to the ground Det. Mazzei and Lt. O'Sullivan observed a firearm come out of his waistband; Mr. Belk attempted to replace the firearm in his waistband as he got up and ran northbound on Courtland. (8/13 Tr. at 28–29, 30–31, 132–33.) After turning right onto 153rd Street, Mr. Belk threw the firearm toward some trash cans as he ran. (8/13 Tr, at 32. 134.) Lt. O'Sullivan retrieved the firearm, which was a heavy, loaded, 45 caliber automatic pistol, and the defendant was apprehended and arrested on 153rd Street. (8/13 Tr. at 33–34, 36–37, 134–37, 140.)

The defendant was transported to the 40th Precinct station house and later, because he complained of a toe injury, to Lincoln Hospital. Det. Hanlon accompanied him to the hospital. (8/13 Tr. at 35, 137; 10/4 Tr. at 4.) While at the hospital awaiting medical attention, Mr. Belk complained to Det. Hanlon of pain in his foot; Det. Hanlon told him that he would have to wait for the nurse. Shortly thereafter, defendant made a statement to the effect: "You just saved somebody a world of hurt." (10/4 Tr. at 4.) The statement was not made in response to questioning and Det. Hanlon did not ask follow-up questions at that time. (10/4 Tr. at 4–5, 14.) It is undisputed that no *Miranda* warnings had been administered to defendant before he made the statement.

### DISCUSSION

Defendant asserts that the law enforcement officers' pursuit of him as he refused to speak with them and attempted to ride away on his bicycle constituted an illegal "seizure" of defendant, and that the weapon and the statement should be suppressed as fruits of the illegality. Mr. Belk also asserts in his affirmation, as noted above,

that he was "questioned" by the police, although neither the affirmation nor his proffer at the hearing elaborates on that assertion. He argues that the statement, as "the product of custodial interrogation without *Miranda* warnings," must be suppressed. (Def.'s October 31, 2001 Letter Brief at 9.)

■ Defendant argues that the Court should reject the Government witnesses' testimony, chiefly because of certain discrepancies between an early account of the street encounter, used in the preparation of the Complaint, and the trial testimony. The Court finds that the only potentially material element of the discrepancy—the Complaint, based on a statement made by Lt. O'Sullivan to Special Agent Berger a few days after the arrest, asserts that Mr. Belk rode his bicycle south on Courtland Avenue from the point of the initial encounter toward 151st Street and was arrested on 151st Street, rather than north on Courtland toward 153rd Street—is clearly the product of a mistake and that the witnesses' credible account at the hearing is consistent with the physical layout of the area. Because Courtland Avenue runs north and is a one-way street (8/13 Tr. at 62–63), the police would have had to have been driving backwards to pursue Mr. Belk southbound, or to have made a U-turn; none of the accounts mentions such a maneuver. Furthermore, there are no phone booths attached to the buildings in the block between 151st and 152nd Streets on Courtland Avenue. (10/4 Tr. at 23.) Lt. O'Sullivan did not have his paperwork with him when he spoke with Special Agent Berger (8/13 Tr. at 171–72); that is a plausible explanation for the discrepancy. Nor do discrepancies as to what the officers were wearing or whether the defendant spoke at all during transport to the

(Transcript of October 4, 2001 Hearing ("10/4 Tr") at 25–27.)

station house undermine materially the testimony presented at the hearing.

The Court finds no material inconsistencies between the testimony of Det. Mazzei and that of Lt. O'Sullivan concerning post-arrest discussion of the matter. (*Compare* ⅜₃ Tr. at 84–85 *with id.* at 178.) Defendant also points out that Det. Mazzei testified that he did not say "police" until after Defendant began riding up the block; Defendant argues this is implausible if Det Mazzei truly believed Defendant was holding a gun, and thus is a ground for rejecting Det. Mazzei's testimony. The Court finds no reason to discredit Det. Mazzei's testimony on this basis. In any event, the evidence indicates that there was a uniformed officer in the unmarked car (8/13 Tr. at 20, 81), so Det. Mazzei could have assumed that the occupants' law enforcement status was obvious. Defendant further asserts that the Government's failure to proffer testimony as to the cause of Defendant's injury should be taken as indicative of bias on the officers' part. The etiology of the injury is irrelevant to the issues raised in the motion to suppress. Mr. Belk's unelaborated, uncross-examined denial that he was holding anything in his waistband and assertion that he did not ride into a phone booth are, moreover, insufficient to overcome the weight of the credible evidence proffered at the hearing by the Government.

■ "In *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court carved out an exception to the general rule requiring probable cause for a [seizure and] search, permitting an investigating officer briefly to detain an individual for questioning if the officer has a reasonable suspicion 'that criminal activity may be afoot.'" *United States v. Colon,* 250 F.3d 130, 134 (2d Cir.2001). "In determining whether there is reasonable suspicion under the totality of the circum-

stances, 'the court must evaluate those circumstances "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." ' " *Colon,* 250 F.3d at 134 (citing *United States v. Bayless,* 201 F.3d 116, 133 (2d Cir.2000), quoting *United States v. Oates,* 560 F.2d 45, 61 (2d Cir.1977)). Under such circumstances, a seizure occurs for Fourth Amendment purposes " '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *United States v. Mendenhall,* 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497, 508 (1980) (quoting *Terry v. Ohio,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905, n. 16). "Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Mendenhall,* 446 U.S. at 553, 100 S.Ct. at 1877, 64 L.Ed.2d at 508 (citation omitted).

■ Here the two seasoned law enforcement officials perceived, based on their observations of defendant and their prior experience, that defendant was holding a concealed weapon. They thus had reasonable suspicion that criminal activity might be afoot, sufficient to justify a brief investigatory stop and protective search. *Cf. Terry,* 392 U.S. at 30, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911 (officer entitled to conduct limited search where *his* experi-

ence reasonably leads him to conclude criminal activity afoot and that person he is dealing with may be dangerous and nothing dispels his reasonable fear). Nonetheless, they did not seize Mr. Belk, choosing instead to follow along beside him in their car, seeking to question him, as he sought to ride away. That Mr. Belk was not seized at that time and perceived that he was free to disregard the police efforts to question him is clear from his actions— he rebuffed the police efforts to question him and began riding away on his bicycle—and those of the police, who did not command him to stop, cut him off, show their weapons or otherwise use their authority to make him stop.[3] *Cf. California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690, 697 (1991) ("An arrest requires *either* physical force ... *or*, where that is absent, *submission* to the assertion of authority.").

■ Mr. Belk was not seized until after he came off his bicycle, the officers had seen clearly his weapon, he had thrown the weapon clear of his body, and Lt. O'Sullivan had retrieved it. By that time, the officers had probable cause to arrest him. *See United States v. McFadden*, 238 F.3d 198, 204 (2d Cir.2001) ("If 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed,' probable cause to arrest exists," (quoting *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987))).

■ For the foregoing reasons, the police pursuit of Mr. Belk neither constituted a seizure prior to the arrest nor otherwise violated his rights under the Fourth Amendment to the United States Constitution. Furthermore, by discarding the weapon, Mr. Belk had abandoned any expectation of privacy in it, removing from Fourth Amendment protection any interest he had in it.[4] *See Hodari D.*, 499 U.S.

**3.** Defendant relies on a Fourth Circuit case, *United States v. Wilson*, 953 F.2d 116 (4th Cir.1991) for the proposition that persistent questioning constitutes a seizure. Here, the questioning was brief—lasting only for the time it took the police car and bicycle to travel less than a block, unlike in *Wilson*, where the officers followed the defendant around and out of the airport and the officers engaged in "prolonged and persistent questioning." *Wilson*, 953 F.2d at 123. The police officers here, who remained in the car, were never in physical contact or close proximity to defendant while Det. Mazzei was trying to question Mr. Belk. By contrast, in *Wilson* the defendant's bags were searched by police officers in the terminal and then the officers proceeded to follow the defendant out of the terminal and at one point an officer grabbed him by his foot as he was trying to run away. Moreover, in this case, even if the encounter between Belk and the officers could be characterized as a seizure, the officers had reasonable suspicion based on the police officer's perception that Mr. Belk was holding a gun. In *Wilson*, the Fourth Circuit

concluded that the officers who seized the defendant did not have reasonable suspicion.

**4.** The Government argues that defendant's effort to secure suppression of the weapon should be rejected on the basis of his failure to carry his burden of establishing any reasonable expectation of privacy in the weapon. The Government points out, in this connection, that defendant has offered no affirmative evidence even of possession of the gun—his affidavit merely denies that he threw it, and he did not testify at the suppression hearing. Defendant asserts that the Court can find that he had it on his person—and thus that he had an expectation of privacy in it—based on the evidence proffered by the Government at the hearing. The Government is, of course, correct in its assertion that defendant has failed entirely to show that he had any expectation of privacy in the weapon. In light of the Court's conclusions, set forth above, regarding the legality of the officers' actions in connection with the arrest and Mr. Belk's abandonment of the weapon before its seizure it is, however, unnecessary for the Court to deter-

at 629, 111 S.Ct. at 1552, 113 L.Ed.2d at 699 (cocaine abandoned by defendant while running, prior to police tackling defendant and effecting a seizure, not the fruit of a seizure and motion to exclude the cocaine properly denied); *United States v. Welbeck*, 145 F.3d 493, 498 (2d Cir.1998) ("A warrantless seizure of abandoned property does not offend the Fourth Amendment."); *United States v. Jimenez*, No. 99 CR. 1065(WHP), 2000 WL 1752849, at *4–5 (S.D.N.Y. Nov. 29, 2000) (defendant's act of abandonment of bag left officer "free to seize the bag and search its contents to confirm the officers' suspicions that it contained cocaine," and motion to suppress denied where defendant "by her actions and statements, disclaimed any expectation of privacy in the bag.").

■ Nor is Mr. Belk entitled to suppression of evidence of his statement on Fifth Amendment grounds. The credible evidence proffered at the hearing was sufficient to establish that Mr. Belk's statement at the hospital was not made in response to police questioning. The absence of a prior *Miranda* warning thus is not of constitutional significance in connection with proffer of the statement into evidence.

Defendant's motion to suppress physical evidence and his statement to the police is therefore denied in its entirety.

SO ORDERED.

mine whether a defendant can sustain his burden of showing an expectation of privacy by relying on evidence proffered by the Government.