*United States v. Freeman*

# United States Court of Appeals
# For the Second Circuit

August Term 2020

Argued:  September 11, 2020
Decided: November 4, 2021

No. 19-2432

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

RICO L. FREEMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of New York
No. 17-cr-162, Lawrence J. Vilardo, *Judge.*

Before:     SULLIVAN, PARK, AND NARDINI, *Circuit Judges.*

Defendant-Appellant Rico Freeman appeals his conviction following a guilty plea to a narcotics conspiracy charge in the Western District of New York (Vilardo, *J.*).  Prior to sentencing, Freeman moved to withdraw his guilty plea on several grounds, including that the district court misstated the applicable mandatory minimum term of supervised release in violation of Rule 11 of the

Federal Rules of Criminal Procedure. The district court denied the motion, finding that the error was harmless in light of the sentencing ranges that Freeman ultimately faced. On appeal, Freeman argues that the Rule 11 error was not harmless, that his plea was not knowing or voluntary, and that he received ineffective assistance of counsel.

Because both parties wrongly assume that the defendant bears the ultimate burden of persuasion to show that the Rule 11 error affected his substantial rights, we clarify that where a defendant moved to withdraw a guilty plea before sentencing based on a Rule 11 error, it is the government's burden on appeal to show that such error was harmless. We nevertheless find that Freeman's substantial rights were not violated by the Rule 11 error in his plea agreement and colloquy. Because we conclude that the Rule 11 error was harmless, that Freeman's plea was knowing and voluntary, and that Freeman did not receive ineffective assistance of counsel, we affirm the district court's judgment in all respects. **AFFIRMED.**

BRUCE R. BRYAN, Syracuse, NY, *for Defendant-Appellant*.

MONICA J. RICHARDS, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Defendant-Appellant Rico Freeman appeals from a judgment of conviction entered in the United States District Court for the Western District of New York (Vilardo, *J.*) following his guilty plea to one count of conspiring to distribute five or more kilograms of cocaine and 280 or more grams of cocaine base in violation of 21 U.S.C. § 846. Prior to sentencing, Freeman moved to withdraw his guilty plea on several grounds, including that the district court misstated the applicable

2

mandatory minimum term of supervised release in violation of Rule 11 of the Federal Rules of Criminal Procedure. The district court denied the motion, finding that the error was harmless in light of the sentencing ranges that Freeman ultimately faced. On appeal, Freeman argues that the Rule 11 error was not harmless, that his plea was not knowing or voluntary, and that he received ineffective assistance of counsel.

Because both parties wrongly assume that Freeman, as the defendant, bears the ultimate burden of persuasion to show that the Rule 11 error affected his substantial rights, we clarify that where a defendant moved to withdraw a guilty plea before sentencing based on a Rule 11 error, it is the government's burden on appeal to show that such error was harmless. This clarification is consistent with the Supreme Court's guidance in *United States v. Vonn*, 535 U.S. 55 (2002), which explains that a preserved challenge to a Rule 11 error is subject to harmless error review on appeal and that the government bears the burden of showing that the error had no effect on the defendant's substantial rights.

While this framework is more defendant-friendly than what the parties argue in their briefs, we nevertheless find that Freeman's substantial rights were not violated by the Rule 11 error in his plea agreement and colloquy and therefore

conclude that the error was harmless. For the reasons set forth below, we affirm the district court's judgment.

## I. BACKGROUND

In August 2017, a grand jury returned an indictment charging Freeman with one count of conspiracy to distribute five or more kilograms of cocaine and 280 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846. The government subsequently filed an information pursuant to 21 U.S.C. § 851 to establish Freeman's prior felony drug conviction, which had the effect of raising Freeman's mandatory minimum term of imprisonment from 10 to 20 years and his mandatory minimum term of supervised release from five to 10 years.

In May 2018, Freeman pleaded guilty to the indictment pursuant to a plea agreement with the government. The plea agreement accurately reflected that Freeman faced a mandatory minimum term of imprisonment of 20 years and a maximum term of imprisonment of life, and that he faced a maximum term of supervised release of life. The agreement incorrectly stated, however, that Freeman was subject to a statutorily prescribed mandatory minimum term of five, rather than 10, years of supervised release. The agreement also provided that the Guidelines range for supervised release was five years to life, when in fact the

4

correct Guidelines range was 10 years to life.

The error in the agreement carried over to Freeman's plea allocution. While the district court accurately stated both the minimum and maximum terms of imprisonment that Freeman faced, it wrongly stated that the mandatory minimum term of supervised release was five years. After this misstatement, however, the district court correctly told Freeman that it could sentence him to a life term of supervised release, and Freeman acknowledged that he understood.

In early August, the Probation Department filed a Presentence Investigation Report ("PSR") in preparation for sentencing. Contrary to the plea agreement, the PSR accurately stated that Freeman faced a mandatory minimum term of supervised release of 10 years. On September 4, 2018, Freeman filed a statement affirming that he had no objection to the PSR's factual or legal findings. At that time, Freeman made no mention of the incorrect mandatory minimum term of supervised release referenced in the plea agreement and during the plea colloquy, and made no attempt to withdraw his plea.

On September 10, 2018 – the date that sentencing was scheduled to occur – the district court acknowledged the plea agreement's error regarding the minimum supervised release term. The court adjourned sentencing to allow

5

counsel to speak with Freeman. Three days later, at a status conference, Freeman requested an opportunity to withdraw his plea. According to counsel, Freeman had indicated "that he thinks that the legal basis [for withdrawal] is ineffective assistance of counsel, namely that [counsel] should have caught the error that the [c]ourt found" concerning the mandatory term of supervised release, as well as a miscalculation regarding Freeman's criminal history. App'x at 78. The district court stated that it did not "see any basis for concluding . . . that there was any ineffective assistance," noting that although correction of the Rule 11 error "changes the mandatory minimum in terms of supervised release, it probably wouldn't have changed the term of supervised release at all in terms of the sentence that [the court] would have imposed." *Id.* at 81. Nevertheless, the district court told Freeman that he could file a motion to withdraw his plea, and it ultimately appointed new counsel to help him file that motion and advise him on whether previous counsel had been ineffective.

After seeking and receiving multiple extensions of time, Freeman moved to withdraw his plea on February 18, 2019. He insisted that he had "relied in part on the terms of the plea agreement," including the mistake of law regarding the mandatory minimum term of supervised release, in deciding to plead guilty. *Id.*

6

at 123. He also asserted a "claim of innocence" and argued that he "felt coerced into taking a plea to help secure [his girlfriend's] release [from custody] and also help her to avoid incarceration upon the resolution of her case." *Id.* at 113–18.

The government opposed the motion, arguing that the Rule 11 error did not constitute a "fair and just" reason to permit withdrawal of Freeman's plea. *Id.* at 144. The government argued that the misstatement of the mandatory minimum term of supervised release constituted merely harmless error in light of the maximum penalties Freeman knew that he faced. *Id.* at 144–45 (discussing the Seventh Circuit's holding in *United States v. Saenz*, 969 F.2d 294 (7th Cir. 1992), that a misstatement of the minimum mandatory term of supervised release was harmless where the maximum term was life). Further, the government noted that the length of Freeman's total sentence was ultimately unchanged because the intervening passage of the First Step Act in December 2018 reduced his mandatory minimum term of imprisonment from 20 to 15 years, resulting in a combined mandatory minimum sentence of 25 years – the same total set forth in the plea agreement, though with a different distribution among the component parts.[1]

---

[1] The First Step Act amended 21 U.S.C. § 841(b)(1)(A) to lower the mandatory minimum sentence from 20 years to 15 years for recidivists who commit certain drug offenses. Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221 (2018).

At oral argument on Freeman's motion, the district court sought to understand the impact of the Rule 11 error on Freeman's plea. Citing the effect of the First Step Act in reducing Freeman's mandatory minimum term of imprisonment, the court asked defense counsel how the misstatement of the mandatory minimum term of supervised release "would have made a material difference to [Freeman] in deciding whether to plead guilty[.]" App'x at 156. Freeman's counsel – who was appointed for the purpose of making the motion to withdraw – responded, "I don't know that it would, Judge, but we don't know that." *Id.*

A few weeks later, the district court denied Freeman's motion to withdraw his guilty plea. First, the court found that Freeman's own sworn statements during his plea colloquy – including his admission that he knew that the narcotics conspiracy to which he was pleading guilty involved at least five kilograms of cocaine and 280 grams of cocaine base – contradicted his claim of legal innocence. Second, the district court found that Freeman's sworn responses to the court's various questions at his plea colloquy also refuted any argument that he had been coerced into pleading guilty against his will.

Finally, the court considered Freeman's argument that the misstatement of

the mandatory minimum term of supervised release in his plea agreement and during the plea colloquy rendered his plea not knowing and voluntary and thus constituted a fair and just reason for withdrawal. The court's analysis ultimately focused on whether that mistake was harmless. Relying on the Seventh Circuit's holding in *Saenz*, the district court first noted that the 10-year mandatory minimum supervised release term was well within the articulated range of five years to life and therefore, at the time of his plea, Freeman "was fully aware that he could be sentenced to ten years of supervised release or more." *Id.* at 184.

The district court also agreed with the government that because the First Step Act reduced Freeman's mandatory minimum term of imprisonment from 20 to 15 years, "the combined total [mandatory] sentence of imprisonment and supervised release" remained unchanged. *Id.* at 185 (quoting *United States v. Andrades*, 169 F.3d 131, 134 (2d Cir. 1999) (internal quotation marks omitted)). Indeed, the district court observed that the error in the plea agreement and Rule 11 colloquy had the fortuitous effect of delaying Freeman's sentencing and enabling him to take advantage of the more favorable terms set forth in the First Step Act.[2] The court saw "no reasonable argument that Freem[a]n would not have

---

[2] As noted above, the First Step Act reduced by five years the mandatory minimum sentence for recidivists who commit certain drug offenses. For offenses committed before the First Step Act's

9

pleaded guilty if he knew then what he knows now." *Id.* at 186. The district court thus agreed with the government, concluding that the error in the plea agreement was "no more than 'a minor and technical violation of Rule 11 which amounts to harmless error,'" and that "there [was] no fair and just reason to allow Freeman to withdraw his guilty plea." *Id.* (quoting *Andrades*, 169 F.3d at 133).

On June 14, 2019, the district court sentenced Freeman to 15 years' imprisonment and 10 years' supervised release, the minimum total sentence allowed by law. Freeman timely appealed.

## II. DISCUSSION

On appeal, Freeman argues that the district court should have granted his motion to withdraw his guilty plea. He principally contends that the district court's misstatement of the mandatory minimum term of his supervised release was not harmless. He further asserts that this Rule 11 error – in tandem with other purported errors relating to the factual basis for the plea and his allegation that the government threatened to prosecute his girlfriend for witness tampering if he did

---

enactment, the reduced mandatory minimum sentence applies only "if a sentence for the offense has not been imposed as of such date of enactment." Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221 (2018). Because the district court pointed out the Rule 11 error to Freeman on the day that he was originally to be sentenced, and then gave him substantial time to consider withdrawing his plea, the court did not impose Freeman's sentence until after the Act had taken effect.

not plead guilty – prevented him from making a knowing and voluntary guilty plea. Finally, Freeman argues that he received ineffective assistance of counsel.

Before we address the merits of these arguments, we must first clarify the applicable framework and standard of review on appeal where a defendant asserts a Rule 11 error.

**A. Where the defendant identified a Rule 11 error before sentencing, the government bears the burden on appeal of showing that the error is harmless.**

Prior to sentencing, Freeman moved to withdraw his plea based on the Rule 11 error identified by the district court, thereby preserving his challenge on appeal. The parties presume to apply different standards of appellate review to this challenge. The government argues that we should apply an abuse of discretion standard and place the burden of persuasion on Freeman. For his part, Freeman likewise places the burden of persuasion on himself but argues for a harmless error standard. A closer look at our precedent establishes that both parties' proposed standards are incorrect.

Rule 11 of the Federal Rules of Criminal Procedure "sets forth requirements for a plea allocution and 'is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Andrades*, 169 F.3d at 133 (citation omitted). Rule 11(d) provides

11

that "[a] defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence if," as relevant here, "the defendant can show a fair and just reason for requesting the withdrawal." Nevertheless, while a district court's failure to correctly provide the defendant with all the information required by Rule 11 may constitute a "fair and just reason" to request the withdrawal of a guilty plea, Rule 11(h) makes clear that such a failure does not automatically require return of a defendant's guilty plea. Rather, "[a] variance from the requirements of" Rule 11 may be disregarded as harmless error when it "does not affect substantial rights." Fed. R. Crim. P. 11(h); *see United States v. Ferrara*, 954 F.2d 103, 106 (2d Cir. 1992) (explaining that "[s]ection (h) was added to Rule 11 . . . to make clear that guilty pleas 'should not be overturned, even on direct appeal, when there has been a minor and technical violation of Rule 11 which amounts to harmless error'" (citation omitted)).

It is true that, generally, we review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *See United States v. Adams*, 448 F.3d 492, 498 (2d Cir. 2006). But that is not the case when the motion to withdraw is based on an alleged failure to provide sufficient Rule 11(b) warnings prior to the plea. As the Supreme Court explained in *United States v. Vonn*, when a reviewing

12

court considers a preserved challenge to a Rule 11 error, the government bears the burden of proving that the error was harmless. 535 U.S. at 58. And since the *Vonn* harmless error standard applies on appeal when a defendant has objected in district court, it follows logically that it must also apply when the defendant moved to withdraw his guilty plea based on an alleged Rule 11 violation. *See United States v. Yang Chia Tien*, 720 F.3d 464, 469 (2d Cir. 2013) (reviewing for harmlessness where defendant raised a Rule 11 argument in a pro se motion to withdraw his plea in district court); *United States v. Gonzalez*, 420 F.3d 111, 131 (2d Cir. 2005) (stating that although district courts "enjoy considerable discretion in ruling on motions to withdraw guilty pleas," such motions must be granted "when a defendant was not provided with the 'mix of information' required by Rule 11 unless, of course, the error can be deemed harmless because it would not have affected the defendant's decision to plead guilty" (citation omitted)).

To be sure, our past decisions reviewing the denial of a defendant's motion to withdraw based on an alleged Rule 11 error have not always been consistent or a model of clarity. *Compare United States v. Harrington*, 354 F.3d 178, 183–84 (2d Cir. 2004) (stating, when reviewing the denial of a defendant's motion to withdraw based on a Rule 11 error, that "the defendant has the burden of showing that a

13

district court's error had an effect on his decision to plead guilty" (internal quotation marks, citation, and alterations omitted)), *with Yang Chia Tien*, 720 F.3d at 469, *and United States v. McCutcheon*, 765 F. App'x 507, 510 n.1 (2d Cir. 2019) (explaining that defendant "preserved his Rule 11(b)(2) challenge by moving to withdraw his plea" in part based on Rule 11 error, so the Court would review that challenge for harmless error, placing the burden of persuasion on the government). Freeman's confusion in the present case likely stems from his reliance on *Harrington*, a decision that appears to have overlooked *Vonn* (handed down two years earlier) and instead applied a conflicting standard from a pre-*Vonn* Second Circuit case, *United States v. Harrison*, 241 F.3d 289, 293 (2d Cir. 2001). Nevertheless, after *Harrington* adopted the standard from *Harrison* – a standard clearly at odds with *Vonn* – a subsequent Supreme Court case, *United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.7 (2004), reiterated the *Vonn* standard and thus cast doubt on *Harrington*'s deviation from prior Supreme Court precedent.

Our more recent case law follows the standard reiterated in *Dominguez Benitez*. *See, e.g.*, *Yang Chia Tien*, 720 F.3d at 469 (citing *Dominguez Benitez*, 542 U.S. at 81 n.7); *see also United States v. Johnson*, 850 F.3d 515, 522 (2d Cir. 2017) (citing the relevant standard from *Yang Chia Tien*); *United States v. Vaval*, 404 F.3d 144, 151 n.3

14

(2d Cir. 2005). We therefore conclude that intervening Supreme Court and Second Circuit precedent requires us to reject the standard applied in *Harrington*. *See Finkel v. Stratton Corp.*, 962 F.2d 169, 174–75 (2d Cir. 1992) (recognizing that generally, "one panel of this court may not overrule the decision of a prior panel," but "that [this] rule does not apply where an intervening Supreme Court decision casts doubt on the prior ruling").

Whatever the source of the past confusion, we now make clear that where a defendant identified a Rule 11 error in moving to withdraw his guilty plea below, the government bears the burden on appeal of showing, based on the entire record, that the error did not affect the defendant's substantial rights. *See Johnson*, 850 F.3d at 522 (explaining that where defendant raised a Rule 11 violation in district court, the government "must prove that the error was harmless beyond a reasonable doubt" (internal quotation marks omitted)); *Yang Chia Tien*, 720 F.3d at 469; *see also Dominguez Benitez*, 542 U.S. at 80 (noting that reviewing courts must consult the whole record when considering the effect of a Rule 11 error on substantial rights).

## B. The government has proven that, in light of the entire record, the Rule 11 error did not affect Freeman's substantial rights.

Having clarified the applicable standard, we now turn to Freeman's plea. The district court in this case determined that even if Freeman had been informed

of the correct mandatory minimum term of supervised release, he still would have pleaded guilty. We reach the same conclusion and find that the government has carried its burden of showing that the district court's misstatement of Freeman's mandatory minimum term of supervised release was harmless.

As the government points out in its brief, Freeman expressly acknowledged before his guilty plea that he faced a potential *life* term of supervised release. Moreover, prior to sentencing, Freeman voiced no objection to the PSR, which correctly stated that he faced a mandatory minimum term of supervised release of 10 years and a maximum term of supervised release of life. And while Freeman now maintains that the district court's misstatement of his mandatory minimum term of supervised release "strong[ly] induce[d]" his guilty plea, Freeman Br. at 41 (citation omitted), statements on the record by Freeman's counsel – and Freeman himself – belie Freeman's arguments about the significance of the Rule 11 error. Indeed, at oral argument on Freeman's motion to withdraw, his counsel said that he did not know if the Rule 11 error "made a material difference" to Freeman's plea decision. App'x at 156. And at the time of Freeman's sentencing, after the district court denied his motion to withdraw his plea, Freeman personally addressed the court and asserted that he decided to plead guilty *not* because of the

16

court's misstatement of the mandatory minimum term of supervised release, but because of the government's purported threats to prosecute his girlfriend. As Freeman stated before the district court:

> I just want it [to] be known on the record that if my child's mother would have never got arrested, which the case is dismissed now because I signed that plea agreement, I had full intentions of going to trial knowing that [the government] would never have proved 5 kilograms or 280 grams of cocaine base.

*Id.* at 198.

These statements on the record, along with the fact that Freeman fully understood that he faced a potential life term of supervised release at the time of his plea and made no objections to the corrected statement of his mandatory minimum term of supervised release when it appeared in the PSR, demonstrate beyond a reasonable doubt that Freeman would have entered his plea regardless of the Rule 11 error. Accordingly, based on the record before us, we find that the district court's misstatement as to the mandatory minimum term of supervised release did not affect Freeman's substantial rights, *see Vonn*, 535 U.S. at 58, 74, and that the error was therefore harmless.

## C. Freeman's additional challenges to the voluntariness of his plea are directly contradicted by the record.

Freeman raises additional arguments to suggest that his plea was involuntary, including assertions that (1) he was confused as to the factual basis for the drug quantities attributable to him, (2) he is innocent of the crime of which he was convicted, and (3) the government coerced his plea by threatening to prosecute his girlfriend. To the extent that Freeman's additional challenges are unrelated to any Rule 11 error and are offered as "independent ground[s]" to justify his attempt to withdraw his plea, Freeman Br. at 63, we review those challenges under an abuse of discretion standard and review any related findings of fact for clear error. *See United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016); *see also United States v. Peterson*, 248 F.3d 79, 82 (2d Cir. 2001) (explaining that a district court abuses its discretion "if it base[s] its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence" (quoting *United States v. Doe*, 79 F.3d 1309, 1319–20 (2d Cir. 1996))).

Freeman asserts that the record reflects "confusion" as to whether he "knowingly and voluntarily admitted to the drug quantity claimed by the government at the plea proceeding" because the government was vague in representing to the district court how it would prove the drug amounts. Freeman Br. at 63. But the record from Freeman's plea proceeding clearly refutes his

contention that the answers he gave – under oath – concerning the drug amounts involved in his offense were "simply acknowledg[ments] that the [g]overnment had claimed it would offer proof of that amount at trial." Freeman Br. at 60.

At the plea proceeding, the district court asked Freeman a series of clear and direct questions to which he responded affirmatively before admitting his guilt. Among other things, the court asked Freeman whether he was "pleading guilty because [he] did the things that the plea agreement sa[id he] did and that are charged in the indictment," App'x at 51, to which Freeman replied, "Yes," *id*. The court then asked Freeman whether "at least 5 kilograms of cocaine [were] reasonably foreseeable to [him] as being within the scope" of his agreement to "commit a controlled substance felony offense." *Id.* at 51–52. Freeman replied, "Yes." *Id.* at 52. Finally, the court asked Freeman whether "at least 280 grams of cocaine base [were] reasonably foreseeable to [him] as being within the scope" of that same agreement. *Id.* Once again, Freeman said, "Yes." *Id.*

We find no ambiguity in the court's questions or in Freeman's answers, which clearly supported the district court's decision to accept Freeman's guilty plea. These admissions during Freeman's plea proceeding create "a formidable barrier" to challenging the validity of his plea, *Blackledge v. Allison*, 431 U.S. 63, 74

(1977), and Freeman's "bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea" and may be rejected summarily, *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). In short, the record reflects no confusion as to the factual basis of Freeman's plea and undermines any assertion of actual innocence by Freeman on appeal.

Freeman's argument that the government coerced his plea by arresting and prosecuting the mother of his child for witness tampering is equally unpersuasive. As reflected in the record, Freeman made sworn statements during his colloquy affirming that he was pleading guilty "voluntarily and of [his] own free will," without the pressure of any force or threat. App'x at 36 (attesting that no one had "attempted in any way to threaten [him], threaten a family member, [or] threaten anyone close to [him] to make [him] plead guilty"). Freeman offers no evidence to counter these statements, which again "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. We therefore have no reason to discount them in favor of Freeman's subsequent unsupported allegations.

### D. Freeman's ineffective assistance of counsel challenge fails because he was not prejudiced by the errors that he alleges.

Finally, Freeman challenges his plea on the grounds that he received ineffective assistance of counsel. Specifically, Freeman asserts that his retained

20

counsel's performance was deficient because counsel (1) failed to identify and correct the Rule 11 error in Freeman's plea agreement and allocution, and (2) "failed to ascertain that Freeman was overcharged in the [i]ndictment because the government's evidence did not support the allegation that he distributed five kilograms or more of cocaine and 280 grams or more of cocaine base." Freeman Br. at 31. These arguments, which are really just variations on the arguments discussed above, fail upon review of the record.

When "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citation omitted). The two-pronged standard for evaluating ineffective assistance claims requires Freeman to "show that [his] counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. Of course, we need not consider the *Strickland* components "in the same order or even . . . address both components of the inquiry if the defendant makes

an insufficient showing on one." *Id*. at 697. In other words, we are not required to "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* When considering prejudice in the plea context, we "inquire[] into the record as a whole to determine whether a reasonable probability exists that[,] absent counsel's error," the defendant "would have proceeded to trial rather than plead guilty." *United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005).

With respect to Freeman's ineffective assistance claim based on the Rule 11 error, we conclude that, regardless of whether his counsel committed error in failing to raise that issue before his plea, Freeman cannot now show that he was prejudiced by that failure. Because we have already considered the entire record and found that the government has proven beyond a reasonable doubt that Freeman would still have pleaded guilty even if counsel had identified the Rule 11 error, Freeman cannot possibly establish that he was prejudiced by his counsel's alleged error.

Similarly, Freeman's own sworn statements contradict his current insistence that his lawyer should have known that the indictment overstated the drug quantities attributable to him. During his guilty plea, Freeman expressly

22

acknowledged that more than five kilograms of cocaine and 280 grams of cocaine base were "reasonably foreseeable to [him] as being within the scope" of his agreement to "commit a controlled substance felony offense." App'x at 51–52. While Freeman now questions the government's ability to prove those amounts had he gone to trial, he does not contend that his sworn statements were false, or that his lawyer knew them to be false, at the time of his guilty plea. *See Torres*, 129 F.3d at 715 (affirming denial of motion to withdraw guilty plea where defendant's "unequivocal admissions under oath contradict[ed] his unsupported assertions of pressure"). On this record, Freeman has failed to establish that his counsel's representation fell below an objective standard of reasonableness, or that he was prejudiced by it. That failure is fatal to his ineffective assistance argument.[3]

## III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[3] Whether we consider Freeman's challenges to the voluntariness of his plea as separate grounds for withdrawal of his plea, *see supra* at 18–24, or additional arguments relevant to our Rule 11 analysis of harmlessness, the result is the same. Under any of the potentially applicable standards of review, the record before us is clear and contradicts Freeman's assertions that he should be permitted to withdraw his plea.