23-6113(L)
*United States v. Jones*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of July, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> ROBERT D. SACK,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

v.  Nos. 23-6113(L), 23-6220(Con)

DEREK JONES,

> *Defendant-Appellant.*\*

_____

_____

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| For Defendant-Appellant: | DANIEL S. NOOTER, Washington, DC. |
|---|---|
| For Appellee: | GEORGIA KOSTOPOULOS (David R. Lewis, Karl Metzner, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED AS MODIFIED**.

Derek Jones appeals from the district court's judgment following his guilty plea to one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, based on his years-long scheme to defraud real estate and venture capital investors of millions of dollars. One week before Jones's trial on a multi-count indictment, Jones pleaded guilty to the wire fraud count without a plea agreement. At his change of plea hearing, Jones offered a minimal but legally sufficient allocution, admitting that "during a portion of the time charged in [Count One] in the indictment, I participated in a scheme to defraud other individuals by making material misrepresentations for the purpose of causing them to invest in my

2

business.   As an example of my misconduct, in February of 2018, I sent an email to an individual that overstated the balance of a bank account of one of my businesses."   App'x at 73.   After a series of post-plea events – including Jones's attempt to withdraw his guilty plea on the eve of his originally scheduled sentencing and his subsequent request for a sentencing hearing as to loss amount pursuant to *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979), which the district court denied as unnecessary – the district court sentenced Jones to sixty-six months' imprisonment to be followed by three years' supervised release.   The district court ordered forfeiture in the amount of $8,679,787.66 and restitution in the amount of $5,462,733.15.

Jones raises a number of issues on appeal, arguing that (1) his sentence was procedurally unreasonable because the district court denied him a reduction for acceptance of responsibility, (2) the district court's loss determination was erroneous, (3) he received ineffective assistance when his counsel allegedly promised that he would receive a *Fatico* hearing if he pleaded guilty, (4) the district court's forfeiture order was erroneous, and (5) his sentence should be vacated so that the district court can resentence him under recent amendments to the United

States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

### I. The district court did not clearly err in finding that a reduction for acceptance of responsibility was unwarranted.

Jones argues that his sentence was procedurally unreasonable because the district court declined to reduce his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). We are not persuaded.

A "district court's determination of acceptance of responsibility is a factual finding that must be upheld unless it is without foundation." *United States v. Hirsch*, 239 F.3d 221, 226 (2d Cir. 2001) (internal quotation marks omitted). We have affirmed the denial of a reduction for acceptance of responsibility when a defendant "accept[s] responsibility for conduct that satisfies the bare essentials of the offense of conviction" yet provides an "unbelievable" explanation of his conduct. *United States v. Reyes*, 9 F.3d 275, 279, 281 (2d Cir. 1993) (internal quotation marks omitted).

Here, the district court had ample reason to deny Jones a reduction for acceptance of responsibility. While the Probation Office initially recommended that Jones be granted such a reduction, that recommendation was made in January 2022, long before Jones sought to take back his plea on the grounds that "he did

4

not commit the fraud offense as set forth in Count One," App'x at 82, and that he "was not guilty of the misconduct as charged in both the original Indictment and the Superseding Indictment," *id.* at 84. Jones later clarified these professions of innocence, claiming to be "guilty of [a] very narrow portion of the alleged scheme" and innocent of "the overbroad and all-inclusive scheme that the [g]overnment ha[d] accused [him] of participating in." *See* Dist. Ct. Doc. No. 129 at 10–11.

Jones continued to deny responsibility leading up to sentencing. In moving for a *Fatico* hearing, Jones argued that one of his investment schemes – for which he had manipulated a bank statement to show a balance of $7 million instead of the account's actual *negative* balance, *see* Dist. Ct. Doc. No. 186 at 13 – was "an entirely legitimate enterprise." App'x at 165; Confidential App'x at 14. And at sentencing, he made a lengthy, euphemism-laced speech in which he described his fraud as a set of "poor choices" through which he merely "fell short of [his] ability to maintain an ownership stake" in his real estate investments in "many instances," and "at times overstated the deliverability of [his] projects," or "misstated the finality or existence of financial agreements." App'x at 183, 190, 200; *see generally id.* at 179–202.

Given this record, the district court did not err in finding that a reduction in Jones's offense-level for acceptance of responsibility was unwarranted. While Jones did "accept[] responsibility for conduct that satisfies the bare essentials of the offense of conviction," his explanation of his conduct was "unbelievable" and inconsistent with the extent and scope of the fraud found by the district court (as discussed further below). *Reyes*, 9 F.3d at 279, 281 (internal quotation marks omitted).

## II. The district court's loss determination was not clearly erroneous.

Jones further argues that the district court clearly erred in calculating the applicable loss amount, since the district court allegedly determined "that every dollar invested" with Jones "represented actual loss." Jones Br. at 30. With respect to restitution, Jones's sole argument – made in two sentences – is that because the overall loss calculation was erroneous, the restitution amount must be erroneous as well. *See id.* at 31. Again, we disagree.

We review a district court's loss determination for clear error, *see United States v. Lacey*, 699 F.3d 710, 719 (2d Cir. 2012), and we will find such error "only if, after reviewing all of the evidence, [we are] left with the definite and firm conviction that a mistake has been committed," *United States v. Cramer*, 777 F.3d

6

597, 601 (2d Cir. 2015) (internal quotation marks omitted). "A district court's factual findings at sentencing need be supported only by a preponderance of the evidence." *United States v. Ryan*, 806 F.3d 691, 694 (2d Cir. 2015). "[A]bsolute precision" in the loss amount is not required; the evidence "need only permit the district court to make a reasonable estimate of the loss given the available information." *United States v. Coppola*, 671 F.3d 220, 250 (2d Cir. 2012) (internal quotation marks omitted). Loss amount for purposes of the Guidelines "is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A)(i). As for restitution, we review the district court's order for abuse of discretion. *See United States v. Grant*, 235 F.3d 95, 99 (2d Cir. 2000).

The district court did not err, let alone clearly so, in finding that the loss amount from Jones's fraud was $8.6 million, thus warranting an 18-level increase under section 2B1.1. The district court received detailed submissions from the government showing that Jones had fraudulently collected $8.6 million in contributions from his dozens of victims. *See* Dist. Ct. Doc. Nos. 107, 155, 169, 190; Confidential App'x at 25, 47–50. While Jones paid back approximately $2.3 million to his victims, the district court noted (1) that such repayments would warrant a reduction in the loss amount for purposes of the Guidelines only if made

7

before the offense was detected by the government or a victim, and (2) that Jones made such repayments in response to allegations of fraud or in response to civil judgments against him. *See* App'x at 159–60; U.S.S.G. § 2B1.1 cmt. n.3(E)(i). Regardless, as the district court explained, even if it were to deduct the repayments for purposes of the Guidelines loss amount – and the district court *did* deduct the repayments for purposes of calculating restitution – the loss amount would have remained well above the $3.5 million threshold for the 18-level adjustment that the district court applied. *See* App'x at 159; *United States v. Rigas*, 583 F.3d 108, 120 (2d Cir. 2009) (affirming district court's loss estimate because even under defendant's proposed alternative calculation, the amount would "still satisfy" the applicable Guidelines threshold).

Jones argues that the district court erred in concluding that "*every* dollar invested with Mr. Jones was the actual result of fraud." Jones Br. at 33. But the district court did not so conclude. Instead, it determined that four of Jones's investment vehicles – specifically, "BlueRidge, Atiswin, Living City, and Realize" – were "pervaded by fraud" because "[t]he undisputed evidence showed that [Jones] did not (1) own the properties he claimed, [which he] misrepresent[ed] to potential investors by removing pages from contracts; (2) maintain th[e] $105

8

million investment balance he claimed; (3) have the advisors or executives he claimed; (4) rent the office he claimed; (5) have the employees he claimed; or (6) use the investment funds he received for real estate investments." App'x at 157, 159 (citations omitted). Indeed, the government submitted evidence showing that from the very beginning of Jones's schemes, he was falsely marketing to investors that "[w]e already have six . . . sites in our portfolio," Dist. Ct. Doc. No. 107 at 5, and a year later he was misappropriating investor funds to repay debts from prior dealings, *id.* at 7. Accordingly, the district court found that "the entire flow of funds into those businesses [is] the measure of the loss." App'x at 157. But the district court did not include in its loss calculation other business ventures controlled by Jones – for example, Rincon Point and Chisholm Creek – since the government did not present evidence regarding whether those other ventures were fraudulent. *See id.* at 196–97.

Jones insists that he spent a portion of the funds he raised for his fraudulent schemes on "legitimate" business expenses such as investment marketing brochures, architectural drawings, and escrow deposits. But the mere existence of such expenditures did not make Jones's investment vehicles legitimate. *See id.* at 158 (finding that Jones was not actually trying in good faith to purchase the

9

resort he marketed to investors and instead was "engaged in repeated financial tricks"). We therefore cannot say that the district court clearly erred or abused its discretion in concluding that Jones's four investment vehicles were entirely fraudulent notwithstanding these expenses.

Jones next argues that the district court's loss determination was erroneous because the government did not present direct evidence that every investor in the four "thoroughly fraudulent" schemes actually received one of the fraudulent misrepresentations, *i.e.*, one of the "false bank statements," "forged leases," "carefully altered real estate contracts," "expertly crafted but fraudulent investor brochures," or "doctored fake e-mails from purported employees who in fact were not employees" used by Jones to execute his fraud. App'x at 161; *see* Reply Br. at 8. Jones cites our decision in *United States v. Stanley* for the proposition that the "correct calculation of loss in a fraud case includes only investors who actually received fraudulent misrepresentations" and contends that the district court must have "record evidence to support [its] finding that every victim included in the loss calculation had actually been defrauded by the defendant." Reply Br. at 8 (citing *United States v. Stanley*, 12 F.3d 17, 21 (2d Cir. 1993)). But the district court here had just such record evidence. It expressly found that the "overwhelming

circumstantial evidence" established that the four investment vehicles were "thoroughly fraudulent," a conclusion that in turn allowed the district court to find, by a preponderance of the evidence, that every investor in those four fraudulent schemes had been defrauded. App'x at 159.

*Stanley*, which involved a coverup of unexpected losses in entirely legitimate trust accounts, does not require a different conclusion. Only certain clients were deceived through the doctored account statements at issue in *Stanley*, so we held that "only the loss attributable to those customers may be considered for purposes of determining actual loss." *Stanley*, 12 F.3d at 21. Here, by contrast, the district court concluded that Jones's four investment vehicles were "pervaded by fraud" and that therefore "the entire flow of funds into those businesses [is] the measure of the loss."[2] App'x at 157, 159. The district court had no need to confirm which brochure or manipulated bank statement each

---

[2] Jones suggests in a footnote that if the case were to be remanded for further fact-finding as to loss amount, such factfinding might give him an opportunity to raise numerous issues, including: whether venue is appropriate, whether there were ten or more victims, whether Jones used "special skills" and "sophisticated means" in his fraud, as well as whether his fraud was a single, continuous scheme, and, if not, whether a portion of the loss amount in his restitution order was barred by the applicable statute of limitations. Jones Br. at 42–43 n.10. We do not treat Jones's cursory footnote as raising or preserving any of these arguments. *See United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993).

11

investor received – the fact that a person contributed funds to one of Jones's four schemes was conclusive of loss as to that person.

Our review of the evidence does not leave us "with the definite and firm conviction" that the district court's conclusion was mistaken. *Cramer*, 777 F.3d at 601 (internal quotation marks omitted). And since Jones's sole argument on appeal with respect to restitution is that the overall loss calculation – but not any of the district court's deductions – was erroneous, we conclude that the district court did not abuse its discretion in calculating restitution. Accordingly, we affirm the district court's loss determination for purposes of both Jones's Guidelines calculation and his restitution amount.

### III. Jones's ineffective assistance of counsel claim fails.

Jones contends – as he did in his motion to withdraw his guilty plea – that his counsel provided "erroneous legal advice that [he] would be entitled to a *Fatico* hearing on loss amount if he pleaded guilty to the fraud." Jones Br. at 52. Absent this purported promise of a *Fatico* hearing, Jones claims he would not have pleaded guilty. *See id.* at 49; Reply Br. at 24.

When a defendant brings an ineffective assistance claim on direct appeal, we may "(1) decline to hear the claim, permitting the [defendant] to raise the issue

as part of a subsequent petition for writ of habeas corpus; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Overton*, 24 F.4th 870, 880 (2d Cir. 2022) (alterations and internal quotation marks omitted). "[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance," since "a trial record [is] not developed precisely for the object of litigating or preserving" such claims. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). However, in a case where "the defendant has new counsel on appeal and he argues no ground that is not fully developed in the record," there is "no reason [for our Court] to defer consideration of the claim." *United States v. Finley*, 245 F.3d 199, 204 (2d Cir. 2001). Given the facts of this appeal, we will decide Jones's claim on the record before us.

A challenge to a guilty plea based on ineffective assistance of counsel is governed by the two-part *Strickland v. Washington* test. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Under that test, a defendant must (1) "show that his counsel's representation fell below an objective standard of reasonableness" and (2) demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

13

*United States v. Freeman*, 17 F.4th 255, 265–66 (2d Cir. 2021) (alterations and internal quotation marks omitted). "[T]he burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013) (internal quotation marks omitted). There is a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance," and an "absence of evidence" obviously cannot overcome that presumption. *Id.* at 23 (alterations and internal quotation marks omitted).

Jones's assertion that "[he] was led to believe by [his former counsel] that he would have *the right* to a *Fatico* hearing even if he pleaded guilty," Reply Br. at 24 n.6 (emphasis added), is contradicted by the record. In his 2023 sentencing letter to the district court, Jones stated that he "was informed and believed based upon the guidance I received from my counsel at Federal Defenders that . . . an evidentiary hearing would be available, as a matter of right *or at least as a matter of course*, to resolve questions concerning the scope and scale of alleged misconduct and whatever financial losses may have been proximately caused by same." Dist. Ct. Doc. No. 189-1 at 3–4 (emphasis added). In a January 2022 declaration in Jones's family court proceeding, Jones's former counsel stated that "the entire loss schedule [for Jones's wire fraud conviction] remains contested and will

14

presumably be the subject of a 'Fatico' hearing in the context of sentencing."   Dist.
Ct. Doc. No. 187-2 at 2.   Neither statement reflected that Jones's former attorney
promised him that he would receive such a hearing as a matter of *right*.   Indeed,
counsel's use of the word "presumably" suggests just the opposite – that while a
*Fatico* hearing was a possibility, it was far from guaranteed.

Moreover, Jones's statement reflects his awareness that a *Fatico* hearing
would be warranted only "to resolve questions concerning the scope and scale of
alleged misconduct and whatever financial losses may have been proximately
caused by same."   Dist. Ct. Doc. No. 189-1 at 3–4.   Obviously, the determination
as to whether such a hearing would be warranted was for the judge – not Jones or
his counsel – to make.   The district court's ultimate denial of Jones's request for a
*Fatico* hearing – based on the court's "determin[ation] that a *Fatico* hearing is not
required to adjudicate the Defendant's objections," App'x at 114 – was perfectly
consistent with the representations made by his former counsel prior to his guilty
plea.

Based on the record evidence, Jones has not overcome the "strong
presumption" that his "counsel's conduct fell within the wide range of reasonable
professional assistance."   *Burt*, 571 U.S. at 23 (alterations and internal quotation

15

marks omitted). Nor has he shown that he was prejudiced by his counsel's statements, since he could not have reasonably believed that he was entitled to a *Fatico* hearing even if the district court determined that such a hearing was not necessary. *See United States v. Prescott*, 920 F.2d 139, 144 (2d Cir. 1990) (noting that "procedure followed in resolving disputed factors at sentencing rests in the district court's sound discretion," and "court is under no duty to conduct a full-blown evidentiary hearing").[3]

### IV. We affirm as modified the district court's judgment to correct the forfeiture amount stated therein.

Shortly after the district court entered its judgment, the government filed a motion pursuant to Federal Rule of Criminal Procedure 36 to correct the judgment, since the forfeiture amount listed therein was overstated by $55,000. *See* App'x at 240. When Jones made clear in his response to the government's motion that he planned to raise numerous substantive objections regarding the forfeiture amount, the government withdrew its motion, since Jones had expanded it beyond the "clerical" correction authorized by Rule 36. *Id.* at 242. On appeal, Jones now

---

[3] In his reply brief, Jones expressly disavows the other ineffective-assistance argument he presented to the district court, which was that his former counsel's performance was deficient because he failed to *request* a *Fatico* hearing. *See* Reply Br. at 25. Of course, Jones did ultimately request such a hearing, which the district court denied.

raises the $55,000 error as a single issue.   The government agrees, as it did in its Rule 36 motion, that the forfeiture amount stated in the judgment should be reduced by $55,000 to $8,624,787.66.[4]

"[W]e have long recognized the power to modify judgments to conform with the district court's authority and to affirm them as modified, as may be just under the circumstances."   *United States v. Adams*, 955 F.3d 238, 250 (2d Cir. 2020) (internal quotation marks omitted).   Since we agree with the parties that the forfeiture amount stated in the district court's judgment should be $8,624,787.66, we exercise our authority to affirm the judgment as so modified.

### V.    Jones is free to seek a reduction in sentence under 18 U.S.C. § 3582(c)(2).

Finally, Jones points out that, while this appeal was pending, the Sentencing Commission adopted Amendment 821 to the Sentencing Guidelines, which he contends would have reduced his sentencing range due to his status as a zero-point offender.   *See* U.S.S.G. § 4C1.1.   Accordingly, Jones asks us to vacate his sentence so that the district court can resentence him under the new Guidelines.

---

[4] The restitution order, entered after the $55,000 overstatement had been raised to the district court, does not contain the same error.   *See* Dist. Ct. Doc. Nos. 195, 199.

17

It is well-established that "we may not, in the first instance, apply post-sentence amendments that embody a substantive change to the Guidelines." *United States v. Jesurum*, 819 F.3d 667, 672 (2d Cir. 2016) (internal quotation marks omitted). Changes to the way the Guidelines are calculated are typically deemed substantive. *See United States v. Major*, No. 23-6166, 2024 WL 1404577, at *3 (2d Cir. Apr. 2, 2024) (collecting cases). It is "readily apparent" that Amendment 821's creation of a new reduction for zero-point offenders "effects a substantive change to the Guidelines and does not merely clarify the Guidelines' application." *Jesurum*, 819 F.3d at 672–73; *cf. United States v. Guerrero*, 863 F.2d 245, 250 (2d Cir. 1988) (applying Guidelines amendment because it "only clarif[ied] a meaning that was fairly to be drawn from the original version"). Because we "may not apply [a substantive change] when assessing whether the district court erred in its application" of the Guidelines, we have no grounds to vacate Jones's sentence. *Jesurum*, 819 F.3d at 673. Nonetheless, Jones remains free to seek a reduction of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2), which allows a district court, after considering the section 3553(a) factors, to reduce the term of imprisonment of a defendant who has been sentenced "based on a sentencing

18

range that has subsequently been lowered by the Sentencing Commission."   18 U.S.C. § 3582(c)(2).

*   *   *

We have considered Jones's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM AS MODIFIED** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court